**UNITED STATES of America**

v.

**Robert Craig WEXLER.**

**Crim. No. 85–469.**

United States District Court, E.D. Pennsylvania.

March 31, 1987.

Paul L. Gray, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Holly Maguigan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

### I. Jurors' Conversations

In this case, the defendant seeks a new trial because the jurors who convicted him of distributing hashish were permitted to discuss the case among themselves before my final charge on the law. The jurors had been told they were not to discuss the case with anyone and were not to let anyone discuss it with them. However, in response to a juror's question, I said they could talk with each other but should not have private conversations nor make up their minds on anything until they had heard all of the evidence, the arguments of counsel, the court's charge, and the viewpoints of their fellow jurors.[1] I repeated the substance of these instructions the following day.[2]

Defendant contends that his right to a trial by a fair and impartial jury and his right to due process were thus denied. Counsel asserts that the jury should have been told not to discuss the case among themselves until after the closing arguments and the court's charge.

"There are generally five reasons given for prohibiting premature jury discussion.

---

1. Specifically, I instructed:
   You may talk about it with each other, but don't have private conversations. Don't make up your mind on anything. I am not saying you can't talk about it with each other, but don't make up your mind about anything until you have heard all the evidence, until you have heard the arguments of counsel, and until you have heard my instructions. And, don't have little private rum[p] sessions where you are going to talk to one or two people. But, you are going to be in recess and I see no reason why you can't generally discuss matters that may bring into sharper focus that which was said. But, the important thing is, don't make up your mind about anything until you hear all the evidence, because something you hear today may come forth in a completely different light when you hear other evidence or other testimony concerning it. So, don't make up your mind about anything until you have heard all the evidence, until you have heard the arguments of counsel, and until you have heard my instructions on the law, and then finally until you have heard the viewpoints of your other jurors, your fellow jurors, at that point.
   You can talk about it, but don't decide anything until you get to the point where you are making

your final deliberations in this case. N.T. 2.10–11.

2. Again, I instructed:
   I said that you were not to make any decisions until you had heard all the evidence, until you had heard the arguments of counsel, and until you had heard my instructions on the law and until you had heard the viewpoints of your fellow jurors. And I emphasize all of those factors. You shouldn't decide anything until you have heard all those things.
   I also told you there shouldn't be any individual discussions over in the corner where two of you talk about it. If you are going to talk about it, it should be in the presence of all of you because you are all part of a decision-making process. Also bear in mind that there is a big difference between talking about something a deliberating about it and deciding it.
   I am not saying you can't talk about it, but I am saying you shouldn't decide anything. In other words, you shouldn't deliberate until you have heard everything that I have referred to.
   So, it is all right to talk, but don't deliberate. N.T. 3.6–7.

First, since the prosecution evidence is presented first, any initial opinions formed by the jurors are likely to be unfavorable to the defendant, and there is a tendency for a juror to pay greater attention to evidence that confirms his initial opinion.... Second, once a juror declares himself before his fellow jurors he is likely to stand by his opinion even if contradicted by subsequent evidence.... Third, the defendant is entitled to have his case considered by the jury as a whole, not by separate groups or cliques that might be formed within the jury prior to the conclusion of the case.... Fourth, jurors might form premature conclusions without having had the benefit of the court's instructions concerning what law they are to apply to the facts of the case.... Fifth, jurors might form premature conclusions without having heard the final arguments of both sides." *Commonwealth v. Kerpan*, 508 Pa. 418, 498 A.2d 829, 831 (1985).

█ I can only assume that the jurors followed my instructions to the letter. As the Supreme Court recently reiterated, "[W]e have not yet attained that certitude about the human mind which would justify us in ... a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instruction of the trial court...." *Lakeside v. Oregon*, 435 U.S. 333, 340 n. 11, 98 S.Ct. 1091, 1095 n. 11, 55 L.Ed.2d 319 (1978), quoting *Bruno v. United States*, 308 U.S. 287, 294, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939). Having specifically told the jurors they were not to discuss the matter in small groups and were not to make any decisions until after they had heard the arguments of counsel, my instructions on the law, and the viewpoints of their fellow jurors, I expressly identified, explained, and warned against the dangers that the *Kerpan* court sought to avoid with a prophylactic code of silence. Nonetheless, additional comment on the first two *Kerpan* reasons for silence may be in order.

The first reason cited in *Kerpan*, since the prosecution's evidence is presented first, a juror's initial opinion is likely to be unfavorable to the defendant, really refers to the order in which the evidence is presented and is no more a reason for prohibiting jury discussion than it is for encouraging it. It assumes that discussion will inevitably lead a juror to an opinion but that the absence of discussion will mean that no juror will reach an opinion on anything. This is an unvarnished non-sequitor which needs only to be stated to be exposed.[3]

The second reason, once a juror declares himself before his fellow jurors he is likely to stand by his opinion even if it is contradicted by subsequent evidence, at least has the ring of pop psychology but is based upon an assumption which is, to my knowledge untested and, to my mind, unbelievable. It assumes that the juror who states an opinion is less likely to change his mind than the juror who has an opinion but does not state it. That would follow only in the rare instance where a need for self-vindication overwhelms a juror's sense of duty. I believe that the vast majority of jurors are concerned, responsible, conscientious citizens who take most seriously the job at hand. I find it difficult to believe that as a group they are more interested in justifying their own loosely formed notions than in doing justice. Moreover, *Kerpan's* second reason must be viewed in the context of examination, cross-examination, traditional American ideas of fairness, the notion that there are two sides to every story, the give and take of jury deliberation, and my instructions. In my first instruction, I told the jurors five times not to make up their minds on anything and explained they should not do so because subsequent evidence might put the matter in a completely different light. In my second instruction, I again told them four times not to make any decisions until they had heard all the evidence. Therefore, they were warned not to cling to initial impressions. Under my instructions, no juror should have been reluc-

---

**3.** I also note in passing the defendant did not present any testimony in this case and so thus this so called reason is academic.

tant to reach a different viewpoint under the influence of additional evidence, the arguments of counsel, the charge of the court, and the viewpoints of his fellows. "The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury." *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974).[4]

There were two reasons why I decided not to prohibit jury discussion during the course of the trial. First, I believed that by adequate instruction I could overcome the reasons traditionally given for not allowing jurors to consult with each other during the progress of the case. Second, I believed they could discharge their responsibilities in a better way if they were permitted to discuss matters as the trial progressed.

The duty of a juror involves complex thought processes: assimiliating and comprehending the evidence, determining credibility issues, recalling the evidence, putting it all into context and relative degrees of reliability, participating in discussions, and making informed decisions. Jurors need all the help they can get and their only source of untainted information and assistance is from those who share with them the responsibility for making the ultimate decisions.

The most obvious reason why jurors will do a better job if permitted to discuss matters among themselves, if they wish to do so, is so that they can alert each other as to matters which may affect credibility. Suppose, for example, a juror becomes convinced a prosecution witness on cross-examination is receiving signals from a spectator. If he is precluded from discussing the case with his fellow jurors, he cannot ask them to check to see if his suspicions are correct. Only at the end of the trial when it is to late to have the matter resolved can it be mentioned. If signals were given, subtle signals, but obvious to an alerted observer, it will be one against 11 for concluding the witness was unworthy of belief, when it should have been all 12. I can see no reason why matters of credibility should not be discussed by adequately instructed jurors during the progress of trial and many reasons why they should be.

The next reason for permitting jurors to discuss the case with each other is that it will make them more attentive, more apt to be interested and involved, more likely to focus on the issues as they unfold. Jurors who have been told, figuratively, to clap their hands over their mouths, who cannot share their ideas and impressions, may tend to clap their hands over their minds as well.

There are three other reasons why juror discussion will enhance juror-performance: such conversations can be an aid in assimilation, comprehension, and recollection. A juror may simply miss a word because someone has coughed. Not all witnesses speak with the same degree of clarity. Not all jurors have the same ability to hear. If someone has missed something, why should the puzzle be preserved until the end of the trial when no one will be sure exactly who said what? A juror may hear but not understand the significance of what he has heard. If he cannot ask his fellows for help, there will be unwarranted inconsistencies and needless uncertainties as the trial progresses. A juror may hear, understand, and then forget. Jurors are allowed to take notes, *United States v. Maclean,* 578 F.2d 64 (3d Cir.1978), for an obvious reason: "[I]t is a valuable method of refreshing memory." 578 F.2d at 66. If a juror can write down his impressions and conclusions as the testimony unfolds, why should he be precluded from sharing them with the other 11, particularly when to do so may help them in their observations, evaluations, and memory?

There was another reason why I gave this instruction: one of the jurors asked if they could discuss matters among themselves. This suggested to me that he was

---

**4.** *See also United States v. Meester,* 762 F.2d 867 (11th Cir.1985); *United States v. Broome,* 732 F.2d 363 (4th Cir.1984); *Meggs v. Fair,* 621 F.2d 460 (1st Cir.1980); *United States v. Lemus,* 542 F.2d 222 (4th Cir.1976), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1584, 51 L.Ed.2d 794 (1977).

thinking, a trait that I believed should be encouraged. Had I said no, I would have been unable to explain why—because I could not then, nor can I now, think of any valid reason to preclude such discussion and a simple no would have left the jurors with the distinct feeling that the ways of the law are mysterious indeed. When lawyers get together, they discuss their cases. I suspect that surgeons talk about surgery, and historians about history. Fans at a baseball game talk about the game. When a group of people have a common interest in an unfolding event, the natural thing for them to do is to talk about it. It makes no sense that during the recesses of a trial, jurors should be expected not to have the case on their minds. Therefore, to tell them they are not to discuss the matter runs contrary to what they would normally be expected to do. I strongly believe that while this instruction may be frequently given, it is the one thing judges tell jurors that they are most likely to ignore. If they do so, their discussions will be in small groups and they may not see the dangers of premature decisions. The instruction that I gave, however, is one that jurors would be much more likely to follow because the reasons behind it are readily comprehensible. To give jurors instructions that run counter to human experience and common sense, is to make them suspicious of all the admonitions of the court.[5] To expect them to listen to testimony which they recognize is to form the basis of perhaps the most important decisions about the lives of other people that they will ever make, and not discuss it with their fellow decision makers until they have had an ample chance to forget the subtleties, nuances, and actual words must strike them as being extraordinary. I firmly believe that jurors are more likely to do that which makes sense than to follow a command which is never explained because it is completely unexplainable.

## II. Motion in Limine

The defendant asked me to rule in advance of trial that his character witnesses could not be asked about either the presence of contraband in the automobile he had been driving prior to his arrest or about a 1974 conviction for possession of a small amount of marijuana. My refusal to do so is assigned as error.

Although I had heard evidence in connection with a motion to suppress and had ruled that evidence about this contraband could not be received, the defendant was asking me to make an advance ruling in a void. At that point, I did not know precisely what the government's evidence would be, whether the defendant would testify, or what evidence he might present in his own behalf. I did not know how the character evidence might be offered, i.e., by way of reputation or by opinion. It has been my observation that character witnesses in general do not listen to the questions asked of them, do not answer them precisely, and offer gratuitous comments about the defendant. Of course, I was aware when I made the ruling that cross-examination of a character witness could only be on matters relevant to the trait of character in issue, *United States v. Curtis*, 644 F.2d 263 (3d Cir.1981), but I did not know what the particular trait of character would be nor how the balancing test of Fed.R.Evid. 403 might become involved.

In *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the Supreme Court was faced with a similar problem with regard to a defendant who asked for an *in limine* ruling that if he testified, a prior conviction could not be used to impeach him. The Court held that the only way a defendant could raise and preserve that question would be to take the witness stand and object to improper cross-examination. In this case, the defendant did not even have to go that far. He could have renewed his motion at any time after I had had an opportunity to hear at least some of the evidence. He could have asked

5. In this case I instructed the jury it was to draw no inference that would be adverse to the defendant because he did not testify. If the jury has been given prior instructions which it has ignored because they make no sense, its mem-bers are more apt to ignore instructions that deal with the defendant's not taking the stand, the presumption of innocence, and burden of proof, and the other rules of law we expect them to take on faith.

to have his witnesses examined and cross-examined while the jury was excused and if not satisfied with my rulings, could have withdrawn them. He did neither. My ruling was correct when made and I was not asked to consider the matter in the light of subsequent developments.

### III. Authenticity of Documents

Defendant next asserts that it was error to receive two vehicle registration certificates issued by the Pennsylvania Department of Motor Vehicles because they did not bear a signature as required by Fed.R. Evid. 902(1). The documents in question were under seal, had stamped signatures, and bore ink initials.

Rule 902(1) provides for the self-authentication of domestic public documents under seal and requires a "signature purporting to be an attestation or execution." The barriers to admission are intended to be low. As the advisory committee to the rules notes, the possibility of forgery of these documents is of small dimension and its detection is fairly easy and certain. In no instance, is the opposing party foreclosed from disputing authenticity. Here, defendant did not dispute accuracy or authenticity but objected to admission on the technical ground that initials do not meet the signature requirement of the rule. Of course, he had a right to do so, but nonetheless Rule 102 provides the rules are to be construed to secure the elimination of unjustifiable expense and delay to the end that the truth may be ascertained and proceedings justly determined.

■ These exhibits were plainly authentic and plainly bore a signature. "A signature may consist of initials only, when the initials are contemplated to be representative of the person making the initials." *United States v. Tasher*, 453 F.2d 244 (10th Cir.1972). "In determining the meaning of any Act of Congress, unless the context indicates otherwise ...—'signature' or 'subscription' includes a mark when the person making the same intended it as such ..." 1 U.S.C. § 1. Under Pennsylvania law, proof of official records may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or

by his deputy. 42 Pa.C.S.A. § 6103. The stamped signature and the verifying initials show the intention of an appropriate custodian to attest to the accuracy and authenticity of the documents. They were properly admitted.

### IV. Sufficiency of the Evidence

The defendant also has moved for judgment of acquittal, contending that the evidence was insufficient to warrant a finding that he participated in the conspiracy charged in the bill of indictment. He cites *United States v. Cooper*, 567 F.2d 252 (3d Cir.1977).

■ Admittedly, the evidence against the defendant was circumstantial, involved a truck, and other defendants. At that point, the similarity with the *Cooper* case ends. Here, there was ample evidence from which the jury could infer that the defendant had great interest in the truck and its cargo, a delivery of a valuable cargo of hashish was being made, and the defendant was engaged in surveillance. There was no other logical explanation for his preparations and actions on the day in question.

The defendant's motion for a new trial and his motion for judgment of acquittal will be refused.