**UNITED STATES of America**

v.

**Robert Craig WEXLER, Appellant.**

No. 87–1271.

United States Court of Appeals,
Third Circuit.

Argued Nov. 5, 1987.

Decided Feb. 1, 1988.

Peter Goldberger (argued), Philadelphia, Pa., for appellant.

Paul L. Gray (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SLOVITER, BECKER and COWEN,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### *Issues*

This is a direct appeal by Robert C. Wexler following his conviction and sentencing for both a conspiracy and a substantive crime relating to distribution of hashish. Three questions are presented: (1) whether the evidence against Wexler was sufficient to prove his knowing and intentional participation in the conspiracy and his aiding and abetting of drug possession by others; (2) whether the trial court erred in instructing jury members, over defense objection, that they were free to discuss the case among themselves before hearing all of the evidence; and (3) whether the trial court erred in failing to make a finding pursuant to Fed.R.Crim.P. 32(c)(3)(D) when a "fact" in the presentence report was disputed by the defendant.

### II.

#### *Facts*

Because the evidence presented is crucial to our disposition, we review it in some detail. In October, 1984, the government became alerted by a Customs Service detector dog in California to the presence of hashish in a thirty-two crate shipment of Mercedes Benz engine parts, which had been shipped from Bombay, India, destined to Quality Traders in Media, Pennsylvania. The government opened two crates at that time and found they contained hashish. Ultimately, the government found that the total amount of hashish in the crates was approximately 750 pounds worth $1.8 million.

The government took control over the crates when they arrived in Delaware in order to make a controlled delivery. Defendant Thomas Bhayana arranged for preparation of the customs documents; thereafter the crates were delivered via undercover agents to Quality Traders where they were accepted by Fred Kornblith. Kornblith, who later cooperated and testified at trial, had taken the job to accept and deliver the hashish in crates for defendant Bhayana at the direction of defendant Louis Samuels, for whom he previously worked distributing drugs. Kornblith paid for the delivery with money supplied by Bhayana. At Samuels' direction, Kornblith rented a yellow Ryder truck into which he loaded the crates. Kornblith testified that Samuels told him that "he was going to do some countersurveillance in the area in case there was [sic] police, and ... going to try and cover [him] as best he could." Supp.App. at 252–53. Kornblith testified he saw Samuels and two unidentified men driving in the area.

Three government agents conducting surveillance of the Quality Traders office while Kornblith was loading the crates into the truck noted in particular a white Ford Sedan which was driving by the surveillance area at about five miles per hour. The three occupants of the Ford Sedan, all readily visible, were looking around until the driver made eye contact with the surveillance agents. At this point, the car stopped in the middle of the street, backed into a nearby driveway and pulled away in a fast manner, with one of the occupants watching the agents until the car was out

---

\* At the time of oral argument, Judge Cowen was sitting by designation as a district judge for the District of New Jersey. Prior to the filing of this opinion, Judge Cowen joined this court as a Circuit Judge.

of sight. From the license number of this car, the agents later discovered that the Ford Sedan had been rented the previous day to Robert Wexler, the defendant. The agents also were able to identify Wexler as the driver of this "lookout" vehicle.

After he had completed loading, Kornblith drove the truck from the Media area to a Dunkin' Donuts store in northeast Philadelphia where the driver of a white car signalled to him by raising his coffee cup. Supp.App. at 256. Kornblith parked the loaded truck, went into the Dunkin' Donuts bathroom, switched vehicle keys with co-defendant Samuels, and left the area driving Samuels' car. Subsequently, one of the agents spotted Wexler talking to Samuels who was sitting on the hood of a white car near the loaded truck behind the donut store.

Samuels then drove the truck from the donut store into the parking lot of a nearby K–Mart store where a white Ford Sedan, driven by a man who fit Wexler's description, stopped by it momentarily. An agent watching the Ryder truck from a helicopter saw the driver get out to talk to the occupants of a blue car. Wexler was observed talking on a public phone in the store and later talking to Samuels in front of the K–Mart continually looking into the parking area while talking. Supp.App. at 95, 179.

Samuels and Wexler were then seen together in a white car in the area conducting what appeared to be continued counter-surveillance activities. The car was stopped, and Wexler, the driver, and Samuels, the sole passenger, were arrested. The Ryder truck keys were found on Samuels. A bag, book of matches and empty coffee cup bearing the Dunkin' Donuts logo were found on the floor behind the driver's seat, which Wexler had occupied. Supp.App. at 277. An operational CB radio and antenna were on the back seat of the car. The radio could be activated by plugging it into the cigarette lighter. A Radio Shack bag and CB radio receipt were on the floor. Upon investigation, the government discovered that the CB was purchased near Wex-

ler's home by a customer who used a false name and address.

Wexler was indicted by a grand jury on November 21, 1985 for conspiring to distribute hashish, 21 U.S.C. § 846, and for aiding and abetting possession by others with intent to distribute in excess of 10 kilograms of hashish, 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The other defendants, Samuels and Bhayana, were charged with additional crimes, fled after the indictment, and remain fugitives. Wexler was tried, offered no defense testimony and was convicted by a jury as charged. After his post-trial motions for judgment of acquittal and new trial were denied, *see United States v. Wexler*, 657 F.Supp. 966 (E.D.Pa. 1987), Wexler was sentenced to eight years imprisonment on the conspiracy count and a consecutive five-year probation on the aiding and abetting count. Defendant now appeals his conviction, the denial of his motions, and his sentence.

### III.

*Sufficiency of Evidence*

 In considering Wexler's contention that all of the above facts, taken together, do not show that he had the knowledge and intent necessary to convict him of the conspiracy and aiding/abetting charges, we must determine whether, viewing the evidence most favorably to the government, there is substantial evidence to support the jury's guilty verdict. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Clapps*, 732 F.2d 1148, 1150 (3d Cir.), *cert. denied*, 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984). The elements of a conspiracy may be proven entirely by circumstantial evidence, *see United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir.), *cert. denied*, 475 U.S. 1024, 106 S.Ct. 1220, 89 L.Ed.2d 330 (1986), but each element of the offense must be proved beyond a reasonable doubt, *see United States v. Samuels*, 741 F.2d 570, 573 (3d Cir.1984). One of the requisite elements the government must show in a conspiracy case is that the alleged conspirators shared a "unity of purpose", the intent to achieve

a common goal, and an agreement to work together toward the goal. *See United States v. Kates,* 508 F.2d 308, 310–11 (3d Cir.1975) (footnotes omitted). In the absence of evidence of these essential factors, a guilty verdict on a conspiracy charge cannot be sustained.

■ In a series of cases, this court has been obliged to overturn conspiracy convictions because the defendant was not proven to have had knowledge of the illegal objective contemplated by the conspiracy. *See, e.g., United States v. Coleman,* 811 F.2d 804, 808 (3d Cir.1987); *United States v. Samuels,* 741 F.2d at 573–74; *United States v. Molt,* 615 F.2d 141, 146 (3d Cir. 1980); *United States v. Cooper,* 567 F.2d 252, 254–55 (3d Cir.1977). The inferences rising from "keeping bad company" are not enough to convict a defendant for conspiracy. *See Cooper,* 567 F.2d at 255.

■ Although the government's witness, Kornblith, an unindicted co-conspirator, testified that he had never met the defendant nor heard Samuels ever mention defendant's name, App. at 55–56, there is ample circumstantial evidence in this case from which the jury could have concluded that Wexler was involved in a conspiracy with co-defendants Samuels and Bhayana and that the conspiracy involved movement of the cargo of the truck. Wexler drove a car in a manner that suggested he was a "lookout" for the truck movement; he made a motion consistent with signalling Kornblith's arrival at the Dunkin' Donuts store; he spoke with Samuels at various times throughout the operation; and a fictitiously obtained CB radio was in the car he drove when he was arrested. What is missing is any evidence that Wexler knew that a controlled substance was couched behind the doors of the Ryder truck. That knowledge is an essential element of the conspiracy charged. Without it the conviction must fail. As we recently stated, "there must be evidence tending to prove that defendant entered into an agreement and knew that

the agreement had the specific unlawful purpose charged in the indictment." *United States v. Scanzello,* 832 F.2d 18, 20 (3d Cir.1987).

In *United States v. Samuels,* 741 F.2d at 573, we reversed defendant's conviction of conspiracy to distribute heroin, stating, "[t]here is no doubt that the conversation may point to some other crime, but it is not proof of the crime alleged." There, as here, the absence of evidence linking defendant to the specific object of the conspiracy charged proved fatal. Wexler's concession that Samuels and Bhayana conspired to import a substantial amount of hashish into the United States from India does not supply the necessary evidence that Wexler knew that it was hashish or even some other drug that was the subject of movement on the day in question.[1]

In a closely analogous case, *United States v. Cooper,* defendant did not dispute the underlying drug conspiracy, only his participation in it. 567 F.2d at 253. This court still found that Cooper should have been acquitted of the charge because the evidence that he travelled from Colorado to Pennsylvania with a conspirator in a rented Ryder truck and shared a motel room en route was not enough to show that he knew drugs were being transported in the truck. We pointed out that "there is no evidence that [defendant] knew what was in the padlocked rear compartment [of a Ryder truck full of marijuana] and no evidence that illegal plans were discussed." *Id.* at 254. In this case, the government concedes that there was no evidence that Wexler was told there were drugs in the truck, there is no evidence of the subject of Wexler's conversations with Samuels, and no evidence that Wexler (like Kornblith) ever had any prior relationship with Samuels.

The government argues that because Samuels arranged that the hashish should be transported by Kornblith, someone Samuels knew had previously been involved in

---

1. Wexler does not argue that he must be shown to have known the truck was loaded with hashish, as opposed to some other drug, citing *United States v. Worthington,* 642 F.2d 150, 152 (5th Cir.1981) (per curiam). *See* Appellant's brief at 12 n. 7; *but see United States v. Samuels,* 741 F.2d at 573–74. In light of our disposition, we need not decide that issue here.

drug sales, we must draw the inference that Samuels also exercised the same care in involving Wexler. It is likely that Samuels would associate in the scheme only with persons he believed would not go to the police. It is also more likely than not that Wexler suspected, if not actually knew, that some form of contraband was involved in the elaborate secretive arrangements for transport in which he participated. But these permissible inferences do not support a holding that the government met its burden to prove beyond a reasonable doubt that Wexler knew this was a conspiracy to transport hashish or even another controlled substance. The evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime. As in *United States v. Coleman,* 811 F.2d at 808, "[t]he record in this case consists solely of inferences," and is missing "the totality of evidence from which a reasonable juror could logically infer" that Wexler had knowledge of the object of the conspiracy. The evidence is insufficient to support Wexler's conspiracy conviction.[2]

 It follows that the aiding and abetting conviction must fall for parallel reasons. The crime of aiding and abetting requires a showing of intent to help those who are involved in a certain crime. *See United States v. Dixon,* 658 F.2d 181, 189 n. 17 (3d Cir.1981) ("In order to convict a defendant of aiding and abetting the commission of a crime, the Government must prove ... that the defendant charged with aiding and abetting that crime knew of the commission of the substantive offense and acted with the intent to facilitate it"); *see also See United States v. Bey,* 736 F.2d 891, 895 (3d Cir.1984); *United States v. Pearlstein,* 576 F.2d 531, 546 (3d Cir.1978). Because the government did not prove that Wexler had knowledge of the hashish, had knowledge that Samuels intended to distribute or possess hashish, or purposefully intended to aid others in committing the crime alleged, a reasonable jury also could not have had sufficient evidence from which to find that Wexler purposefully aided and abetted the possession and/or distribution of hashish.[3]

## IV.

### Conclusion

For the reasons set forth above, we will reverse defendant's convictions.

---

**2.** At oral argument, the government argued that the evidence in *United States v. Leon,* 739 F.2d 885 (3d Cir.1984), which we found sufficient to uphold the convictions of defendant Tomlinson, approximated that presented here as to Wexler. However, Tomlinson was found lying face down on his stomach just yards away from the spot where 20 tons of marijuana had been recently unloaded and not far from ten tons of marijuana found by the agents. The dock area where he was found was a secluded one. *Id.* at 892–93. *Leon* did not raise the question presented here of defendant's knowledge of the contents behind a closed truck door which he neither drove nor rode in.

**3.** In light of our disposition, we do not reach Wexler's contention that in sentencing him the trial judge erred in failing to make a Rule 32(c)(3)(D) finding regarding Wexler's disputation of his description in the presentence report as an "overseer" and "financier" of the hashish operation. *See United States v. Gomez,* 831 F.2d 453 (3d Cir.1987). However, we believe comment is required on the trial court's advice to the jury that before the conclusion of the trial they could discuss the evidence in the presence of all of them, but jurors were not to make up their minds until the conclusion of the case and the court's instructions. While the trial court believed that such discussion would enhance "assimilation, comprehension, and recollection," *Wexler,* 657 F.Supp. at 969, we believe that the firmly-rooted prohibition against premature jury discussion is well-founded. An instruction that permits the jurors to discuss the evidence before conclusion of the case is erroneous. However, in this case, we need not decide whether the trial court's error was harmless, as the government argues.