

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2006

# USA v. Vazquez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1561

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Vazquez" (2006). *2006 Decisions.* Paper 1284.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1284

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1561

———

UNITED STATES OF AMERICA

v.

LUIS VAZQUEZ,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00548)
District Judge: Honorable John P. Fullam, Sr.

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 31, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, Circuit Judges.

(Filed: April 10, 2006)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Luis Vazquez was convicted after a two-day jury trial in the United States District

Court for the Eastern District of Pennsylvania on charges of distributing in excess of 500

grams of cocaine and conspiring to distribute cocaine. He was subsequently sentenced to

156 months incarceration. Before us is Vazquez's appeal from the District Court's final judgment of conviction,[1] in which he argues the evidence presented at trial was insufficient to support that conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

## I.

We construe the facts on which Vazquez's conviction was based in the light most favorable to the government, as we must following the jury's guilty verdict. Glasser v. United States, 315 U.S. 60, 80 (1942).

Wilfredo Martinez, an alleged co-conspirator of Vazquez who agreed to assist the government, testified that he purchased cocaine from Vazquez "like every two weeks" from late 2000 until June of 2002.[2] Vazquez would "front" this cocaine to Martinez, meaning that Vazquez would provide cocaine to Martinez on credit and was paid only after Martinez re-sold the cocaine to his own customers. One of Martinez's customers was one William Eichler, to whom Martinez sold cocaine until June 6, 2002, when Martinez was arrested. Martinez testified that he obtained the cocaine he sold to Eichler from Vazquez.[3]

---

[1]By letter dated August 29, 2005, Vazquez informed the Court that he does not raise any sentencing issues on appeal.

[2]To obtain this cocaine, Martinez would contact a beer distributorship located in Northeast Philadelphia, at which distributorship he would meet with Vazquez and obtain the cocaine.

[3]A government forensic chemist testified at trial that the substances sold by Martinez to Eichler on May 9, 2002, and May 31, 2002, tested positive for cocaine hydrochloride. These substances weighed 224.1 and 359 grams, respectively.

Martinez agreed to cooperate with the government after his arrest on June 6, 2002, and allowed the government to record phone conversations between himself and Vazquez. A conversation between the two men on June 6, 2002 concerned money Martinez owed Vazquez for cocaine that Eichler had previously obtained from Martinez. During that conversation, Vazquez referred to "car," which Martinez testified was a code for cocaine. Vazquez ended the conversation by saying he would "have it ready for you [Martinez] tomorrow."

On June 13, 2002, Martinez contacted Vazquez to arrange a meeting between the two men and an undercover officer, Task Force Officer David Grandizio, who would pose as Martinez's customer Eichler. During that conversation, Vazquez referred to the $14,500 debt owed by Eichler. The three men then met inside a van at a Philadelphia parking lot on June 13, 2002. Grandizio (posing as Eichler) then paid Vazquez $5,000 of the $14,500 debt. The $5,000 in cash was passed from Grandizio to Martinez to Vazquez. A search of Martinez after the meeting revealed that Martinez did not have the $5,000. After Grandizio left the van, Vazquez and Martinez discussed having Vazquez supply Martinez with additional cocaine. Vazquez ended that conversation by saying that he would "try to get as much as I can before the, if I can get another, you know."

## II.

"Our review of the sufficiency of the evidence after a conviction is 'highly

3

deferential.'"  United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001).  Accordingly, while we have plenary power to determine, after drawing all reasonable inferences in the light most favorable to the government, whether the evidence would allow a rational jury to convict, id., the jury's verdict must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998).  This is a heavy burden.  Id.

## III.

Vazquez argues his conviction for conspiracy to distribute cocaine cannot stand because there was no physical evidence that he ever possessed or delivered the cocaine that Martinez ultimately sold to Eichler.  He also claims that a conviction for conspiracy cannot be based solely on the testimony of a co-conspirator.  We are unpersuaded.

## A.

Despite Vazquez's argument to the contrary, the lack of direct physical evidence that Vazquez possessed or delivered cocaine does not preclude a conviction for conspiracy.  Because direct evidence of a conspiracy is rare, the "offense is usually provable only through circumstantial evidence."  United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001).  Thus, "inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred."  United States v. Cartwright, 359 F.3d 281, 287 (3d Cir. 2004) (citation omitted).

4

The elements of a conspiracy charge are: a unity of purpose between the alleged conspirators; an intent to achieve a common goal; and an agreement to work together toward that goal. Pressler, 256 F.3d at 149. This Court considers additional factors in evaluating circumstantial evidence of whether a seller of drugs was a party to the underlying agreement of a conspiracy: "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." United States v. Gibbs, 190 F.3d 188, 199 (3d Cir. 1999).

We believe the facts adduced at trial were sufficient to allow a rational jury to logically infer beyond a reasonable doubt that Vazquez committed the charged crimes. The testimony was clear that Vazquez and Martinez schemed together such that Vazquez would provide Martinez with cocaine on credit for subsequent re-sale to his own customers at a profit, after which re-sales Vazquez would be repaid for the cocaine. This testimony itself was sufficient for a rational juror to find that a conspiracy existed.

Moreover, each of the additional evidentiary factors we enunciated in Gibbs was present: Martinez testified that he purchased cocaine from Vazquez twice per week for more than one year and that Vazquez consistently allowed him to do so on credit, which practice established a standardized method of payment as well as a mutual trust between the two individuals. See Gibbs, 190 F.3d at 200 (credit relationship demonstrated mutual trust). Moreover, Vazquez was aware – as was shown by Grandizio (posing as Eichler)

5

passing him $5,000 in partial repayment for cocaine – that Martinez was re-selling the cocaine to other customers. Accordingly, the evidence presented was such that a rational jury could conclude that Vazquez had entered into a conspiracy to distribute cocaine,[4] and we see no reason to question the jury's conclusion that the trial testimony was credible. See United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992) (observing that this Court "presume[s] that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences").

**B.**

Vazquez's argument that he should not have been convicted solely "on the word of Mr. Martinez without showing that appellant actually delivered the cocaine," Br. at 15-16, is without merit. As we stated in United States v. Perez, "uncorroborated accomplice testimony may constitutionally provide the *exclusive basis* for a criminal conviction." 280 F.3d 318, 344-45 (3d Cir. 2002) (emphasis added and citations omitted). As detailed

---

[4]The two cases cited by Vazquez in his brief do not compel a different result. The defendant in United States v. Wexler had his conviction reversed because there was insufficient evidence to conclude that he was aware that the conspiracy he participated in was the charged crime of conspiracy to distribute hashish, and not a conspiracy to distribute stolen goods, a different crime. 838 F.2d 88, 92 (3d Cir. 1988). In this case, Martinez testified that Vazquez had supplied him with cocaine every two weeks for more than one year, thus rebutting any argument that Vazquez was unaware of the type of contraband at issue.

Similarly, the defendant in United States v. Cartwright received a remand and acquittal on the ground that there was insufficient evidence that he had knowledge that he was transacting in controlled substances. 359 F.3d 281, 289-91 (3d Cir. 2004). As discussed, the evidence (e.g., use of the word "car" to refer to cocaine) made clear that Vazquez was aware that he was selling cocaine on credit to Martinez.

6

above, Martinez's testimony was clear that he purchased cocaine from Vazquez and re-sold that cocaine to his own customers at a profit and Vazquez was fully aware of this arrangement. Given that the testimony of a co-conspirator is an adequate basis for a conviction, id., and must be accepted as true for the purpose of determining the sufficiency of the evidence, United States v. Provenzano, 620 F.2d 985, 999 (3d Cir. 1980), Martinez's testimony was a sound basis upon which a rational jury could have found Vazquez guilty of the charged crimes.

**IV.**

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's Order of judgment and conviction.