

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# USA v. Rodriquez-Valdez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3087

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Rodriquez-Valdez" (2006). *2006 Decisions.* Paper 35.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/35

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 05-3087 and 05-3389

———————

UNITED STATES OF AMERICA

v.

JULIO RODRIQUEZ-VALDEZ,
Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
D.C. Crim. No. 01-cr-00298-2
District Judge:  The Honorable Raymond L. Finch, Chief Judge

———————

Argued:  December 5, 2006

———————

Before: McKEE, BARRY and STAPLETON, Circuit Judges

(Opinion Filed:  December 22, 2006)

———————

Stephen A. Brusch, Esq. (Argued)
Suite 2G
P.O. Box 988, International Plaza
Charlotte Amalie, St. Thomas
USVI,   00804

Counsel for Appellant

Major Coleman, Esq. (Argued)
Office of the United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI,   00802-6924

Counsel for Appellee

_____

OPINION

_____

BARRY, Circuit Judge

Appellant, Julio Rodriquez-Valdez ("Valdez"), appeals his judgment of conviction and sentence following a jury trial in the District Court of the Virgin Islands.  Because we find that the jury verdict was not based on sufficient evidence, we will reverse.

**I.**

On October 11, 2001, Valdez was named in a three-count indictment charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; conspiracy to import into the United States five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), and 963; and conspiracy to possess with intent to distribute five kilograms or more of cocaine on board a vessel that was subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 1903 and 18 U.S.C. § 371.  On January 13, 2003, a jury trial began against Valdez and two co-defendants before the Honorable Thomas K. Moore.

At the trial, the government presented evidence that on the night of September 19, 2001, and into the early hours of the following day, the United States Coast Guard, with the assistance of other law enforcement agencies, apprehended two vessels in the waters between St. Maarten and St. Thomas. Among other things seized from the first vessel was twenty bales of cocaine totaling 498.5 kilograms. The second vessel was discovered approximately one mile away from the first. Following a brief chase, the second vessel, which carried Valdez and two others, stopped and its occupants surrendered. No drugs were found aboard.

In addition to evidence regarding the apprehension of the vessels, government witnesses provided testimony as to the events leading up to the seizure. Ramon Ivan Abbot Placencio, a cooperating witness, testified that he was involved in the plan to smuggle drugs from St. Maarten to St. Thomas, and he named those men who were involved with him in the plan. According to the testimony of law enforcement officers and surveillance video shot by them, Placencio spent ten days in a St. Thomas hotel during which he visited the vessel that was later apprehended with Valdez aboard, purchased a cell phone that was later found aboard the first vessel seized, received money from the plan's organizer in order to pay for the hotel and food, and spent time with all the participants in the transaction, including Valdez. Although Placencio testified that

Valdez was "a constant help,"[1] he did not testify that he discussed drugs with Valdez and he did not otherwise implicate him in the transaction. (A.R. 455–56.)  There was no evidence that Valdez stayed at the hotel or that the object of the conspiracy was ever discussed in his presence.

Following the government's case, Judge Thomas K. Moore denied Valdez's motion for a judgment of acquittal, and he was subsequently found guilty on all counts and sentenced by Chief Judge Raymond L. Finch.  He now appeals, arguing that the verdict was not supported by sufficient evidence.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

When reviewing a jury verdict for sufficiency of the evidence, we consider the evidence in the light most favorable to the government. United States v. Williams, 344 F.3d 365, 369–70 (3d Cir. 2003).  We must uphold the conviction "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999).  When considering circumstantial evidence, we will uphold inferences from such evidence "so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989).

---

[1] According to Placencio, Valdez drove him around, assisted him with the changing of his airline ticket, and purchased food and phone cards for the group.

In order to prove conspiracy, the government "must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal." Gibbs, 190 F.3d at 197. Although the government may meet this burden entirely with circumstantial evidence, see United States v. Lore, 430 F.3d 190, 204 (3d Cir. 2005), knowledge of the object of the conspiracy cannot be established by mere speculation based on a defendant's presence at the scene of a crime, see, e.g., United States v. Cartwright, 359 F.3d 281, 286–89 (3d Cir. 2004); United States v. Idowu, 157 F.3d 265, 266–70 (3d Cir. 1998); United States v. Thomas, 114 F.3d 403, 405–06 (3d Cir. 1997), or "keeping [of] bad company," United States v. Wexler, 838 F.2d 88, 91 (3d Cir. 1988); see also United States v. Terselich, 885 F.2d 1094, 1098 (3d Cir. 1989), where other factors do not operate to show that a defendant knew or should have known the conspiracy's particular illegal objective, see United States v. Mastrangelo, 172 F.3d 288, 293–94 (3d Cir. 1999); see also United States v. Wert-Ruiz, 228 F.3d 250, 258 (3d Cir. 2000).

## III.

Valdez argues that the evidence against him was insufficient because, as in Cartwright and its predecessors, no reasonable jury could have concluded beyond a reasonable doubt that he was aware that the object of the conspiracy was the importation of drugs. We agree.

Besides Valdez's presence on the boat (which, as discussed below, does not

amount to much), the government offered precious little evidence to prove that Valdez knew that the object of the conspiracy was the importation of drugs. Placencio's testimony paints a picture of Valdez as a lowly messenger – a "go for" – and, indeed, Placencio failed to mention Valdez as a participant in the drug transaction on the numerous occasions he was asked to do so at trial.[2] In addition, there was no testimony from Placencio or law enforcement authorities that drugs were ever discussed while Valdez was present at the hotel, or that he spent much time at the hotel during Placencio's ten-day stay. As such, any inference that Valdez learned of the purpose of the conspiracy during this period is mere conjecture.

Valdez's presence on the boat is similarly too slender a reed upon which to base a finding that he was aware of the object of the conspiracy. Although the jury undeniably could have concluded that Valdez's presence on the boat signaled an understanding that he was engaged in an illicit transaction, as in many of our previous rulings there was simply no reasonable basis upon which to conclude that he was aware that drugs, as opposed to some other form of contraband, were involved. See, e.g., Idowu, 157 F.3d at 268; Terselich, 885 F.2d at 1098; Wexler, 838 F.2d at 91. No drugs were found aboard the boat and it is certainly possible to smuggle a wide variety of illicit goods (including people) by transferring them from one boat to another on the high seas.

---

[2] In fact, Placencio testified that Valdez was something of a substitute messenger, who completed tasks when "Vincente wasn't around." (A.R. 455.)

6

In sum, we find that, given the evidence presented at trial, no reasonable jury could have found, beyond a reasonable doubt, that Valdez knew that the object of the conspiracy was the importation of drugs.[3]

## IV.

For the foregoing reasons we will reverse the judgment of the District Court and remand with instructions to enter a judgment of acquittal.

---

[3] Although Judge Moore gave a wilful blindness instruction to which Valdez does not object on this appeal, the government did not discuss this in its brief or at oral argument. In any event, given Valdez's limited role in this transaction, we find that a reasonable jury could not have found that he so deliberately ignored the truth as to satisfy the knowledge requirement.