

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2008

# USA v. Edge

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1882

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Edge" (2008). *2008 Decisions.* Paper 1753.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1753

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1882

UNITED STATES OF AMERICA

v.

LAMAR EDGE,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 03-cr-00216-2
District Judge: Honorable Barclay Surrick

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2007

Before: SCIRICA, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*.

(Filed: January 14, 2008)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Lamar Edge was charged with: conspiracy to possess with intent to distribute in

excess of fifty grams of cocaine base ("crack") and to possess with intent to distribute

marijuana, 21 U.S.C. § 846 (Count 1); possession with intent to distribute or aiding and

abetting the possession with intent to distribute in excess of fifty grams of cocaine base ("crack"), 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count 2); possession with intent to distribute or aiding and abetting the possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count 3); carrying a firearm or aiding and abetting the carrying of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count 4); and possession in or affecting commerce of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Count 5). Following a four-day trial, the jury found Edge guilty of Counts 1 through 4. In a bench trial held immediately after the jury verdict, the District Court found Edge guilty on Count 5.

Edge challenges his convictions contending the evidence was insufficient to support the verdict under Counts 1 through 5. He also challenges his sentence, asserting the District Court improperly viewed the Sentencing Guidelines as mandatory. We will affirm.

I.

Responding to a complaint about noise emanating from Apartment J-19 of the Bishop Hill Apartments, Officer Brian Duffy encountered a woman with a young child at the apartment door. At roughly the same time, David Haley, a maintenance worker, saw a man jump from the balcony of Apartment J-19 and run away. Haley also saw two heads "pop out" of the bedroom window of Apartment J-19 and retreat back inside. Haley

2

reported this incident to Lane Murphy, a security officer at the apartment complex, who called the police.

While talking to the police, Murphy saw Edge and Dujuan Lewis leave Building J. Murphy recognized both as men who would "come and go, all hours of the night," from Building J. Lewis was carrying boxes, and Edge was carrying a shopping bag from Modell's Sporting Goods. Murphy observed the two men place the boxes and the bag into the trunk of a blue Oldsmobile parked outside of Building J. Lewis returned to the building while Edge parked the car between Buildings K and L.

Murphy described this conduct to Officer William Tobin and directed him to the blue Oldsmobile. As Officer Tobin examined the license plate, Edge approached the car and stopped suddenly when he saw Officer Tobin. Edge fled, ignoring Officer Tobin's commands to stop. Officer Tobin pursued Edge on foot and observed Edge jump into the back of a maroon Buick.

After a car chase, Officer Tobin, with the assistance of Officer Duffy, captured all three occupants of the car: Edge, Lewis and Rashaun Yeiser. Placing them in custody, the police returned to Apartment J-19 to check on the safety of the woman occupying the apartment. Upon entering, Detective James Frey saw several containers in plain view which appeared to hold marijuana. With this information, the officers obtained a search warrant for drugs and drug paraphernalia. Executing the warrant, the officers found two digital scales, various containers filled with marijuana, large quantities of bags commonly used to package drugs, $6,000 in cash, and a box of nine millimeter handgun ammunition.

3

The officers also secured a warrant for the blue Oldsmobile. Executing the search warrant, the officers found the plastic Modell's bag earlier carried by Edge as well as the boxes Lewis carried out of the building and placed in the trunk. The Modell's bag held one bag of crack cocaine, 341 bags of marijuana, white boxes holding plastic containers filled with marijuana, and a semi-automatic pistol loaded with fifteen rounds of nine millimeter ammunition. The boxes held plastic cubes containing marijuana and a large quantity of clear plastic containers.

## II.

When reviewing a challenge to the sufficiency of evidence, we review the evidence in the light most favorable to the government and uphold the conviction "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999); *see also Rieger*, 942 F.2d at 232 ("We 'must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the [g]overnment, to uphold the jury's decision.'" (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

Edge contends there was insufficient evidence that he knowingly possessed the drugs and the gun[1] or that he agreed, knew or facilitated the underlying substantive offenses. Both assertions lack merit.

---

[1]Counts 2 and 3 require proof that the defendant knowingly possessed the drugs at issue. *See* 21 U.S.C. § 841(a)(1). Under Counts 4 and 5, the government must prove that the defendant knowingly possessed the firearm at issue. *See* 18 U.S.C. § 922(g)(1), § 924(c).

4

A.

Edge contends he cannot be convicted under Counts 1 through 5 of the indictment because each did not knowingly possess the required items. Knowing possession can be established when the defendant has actual possession. *See, e.g., United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991) ("A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it."). There is substantial evidence from which a rational jury could conclude that Edge knowingly possessed the drugs and a gun. Edge carried a white Modell's bag containing marijuana, crack cocaine, and a loaded handgun from the J-Building to the trunk of the blue Oldsmobile. The bag was made of thin plastic material and was open at the top. A person handling such a bag would be able to see and know the bag's contents.

Moreover, evidence presented at trial linked Edge and the blue Oldsmobile to Apartment J-19.[2] Anyone in Apartment J-19 would have known and understood the apartment to be a staging ground for drug distribution. Packages of marijuana, placed in the hall closet and on the television stand, were in plain view. Further, police found a digital scale and box of 9 millimeter shells in the dining room.

Thus, there was substantial evidence for a rational jury to conclude beyond a reasonable doubt that Edge knowingly possessed drugs and a firearm.

---

[2]After Haley observed a person jump from the Apartment J-19 balcony, he saw two black males look out the window of Apartment J-19. Soon thereafter, Edge and Lewis left Building J and loaded the trunk of the blue Oldsmobile. In addition, documents identifying Yeiser were found in both the blue Oldsmobile and Apartment J-19.

B.

Edge contends there is insufficient evidence to convict on Count 1 – conspiracy to possess with intent to distribute crack cocaine and marijuana – because the government failed to prove an agreement or knowledge the containers he carried contained drugs.

"The elements of a conspiracy may be proven entirely by circumstantial evidence, but each element of the offense must be proved beyond a reasonable doubt." *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004) (quoting *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988)).  "One of the requisite elements the government must show in a conspiracy case is that the alleged conspirators shared a 'unity of purpose', the intent to achieve a common goal, and an agreement to work together toward the goal." *Cartwright*, 359 F.3d at 286 (quoting *Wexler*, 838 F.2d at 90-91).  "In order for us to sustain a defendant's conviction for conspiracy, the government must have put forth evidence tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment."  *Cartwright*, 359 F.3d at 286-87 (quoting *United States v. Idowu*, 157 F.3d 265, 268 (3d Cir. 1998)).

There is substantial evidence from which a rational jury could have concluded that Edge was a participant in a conspiracy to possess with the intent to distribute crack cocaine and marijuana.  As noted, Edge knowingly and actually possessed the drugs.[3]

---

[3]Edge attempts to analogize to cases finding insufficient evidence to support a conspiracy conviction because the defendant was unaware of the contents of the illegal transaction.  *See Cartwright*, 359 F.3d at 290-91 (finding no evidence in the record that

(continued...)

6

Further, Edge acted in concert with Lewis to move the drugs and the firearm from Apartment J-19 – a staging ground for drug distribution – to the blue Oldsmobile. Edge drove the Oldsmobile away from Building J, and Edge, with the assistance of Lewis and Yeiser, fled from the police. Based on his conduct and knowing possession of the drugs and the firearm, a reasonable jury could rationally conclude Edge intentionally entered into an agreement with the specific purpose to distribute crack cocaine and marijuana.

III.

---

[3](...continued)
defendant had knowledge of the nature of the transaction and noting the lack of evidence that defendant had ever been in possession of the cocaine); *Idowu*, 157 F.3d at 268-270 (finding the evidence insufficient to support the inference that defendant knew the transaction involved drugs because defendant never heard specific reference to the subject matter, nor did he see the drugs); *United States v. Salmon*, 944 F.2d 1106, 1112, 1114 (3d Cir. 1991) (finding no evidence in the record that defendant Fitzpatrick, asked "to watch [co-defendant's] back," knew the transaction concerned drugs)*; Wexler*, 838 F.2d at 92 n.2 (finding insufficient evidence to support the conclusion that defendant knew the contents "behind a closed truck door which he neither drove nor rode in"); *United States v. Terselich*, 885 F.2d 1094, 1098 (3d Cir. 1989) (finding no evidence that defendant, "shar[ing] driving chores and lodging with the driver of the vehicle," knew that a secret compartment in the trunk of the car contained drugs); *United States v. Cooper*, 567 F.2d 252, 254-55 (3d Cir. 1977) (finding insufficient evidence to support the conspiracy conviction because no evidence suggested that defendant knew or had access to the contents of the padlocked rear of a truck transporting marijuana). Each is distinguishable because the evidence supports an inference that Edge saw drugs in apartment J-19 and was in actual possession of drugs. Further, defendants in the aforementioned cases were conducting surveillance or performing a secondary function. *See Cartwright*, 359 F.3d at 286 ("lookout"); *Idowu*, 157 F.3d at 267 ("driver" who carried the money); *Wexler*, 838 F.2d at 91 ("lookout"); *Salmon*, 944 F.2d at 1114 ("surveillance"); *Terselich*, 885 F.2d at 1098 (passenger who "shared driving chores and lodging" with driver); *Cooper*, 567 F.2d at 254 (passenger who shared hotel room with convicted co-defendant). In contrast, the conduct of Edge suggests a more involved role in the distribution of drugs.

7

In challenging his sentence, Edge contends the District Court improperly viewed the Sentencing Guidelines as mandatory. Specifically, Edge asserts that the District Court "believed that it had no discretion" to consider the differential between crack and powder cocaine, citing *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), for support.

We review the District Court's interpretation of its legal authority at sentencing *de novo*. *United States v. Pojilenko*, 416 F.3d 243, 246 (3d Cir. 2005). We note, at the outset, that the District Court imposed a sentence below the Advisory Guidelines, albeit for reasons other than the crack/powder cocaine differential.[4] The record demonstrates the District Court clearly understood the mandate of *United States v. Booker*, 543 U.S. 220 (2005), and recognized its discretion with respect to the guidelines. The District Court properly considered and then declined Edge's request to vary from the guidelines based on the differential. *See Kimbrough v. United States*, 2007 WL 4292040, at *5, 522 U.S. __ (2007) (holding that the "cocaine Guidelines . . . are advisory only"); *Gunter*, 462 F.3d at 249 ("[T]he District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine

---

[4]Upon consideration of the 18 U.S.C. § 3553(a) factors such as Edge's background, education, family support, etc., the District Court acknowledged that it was departing from the Advisory Guidelines and imposed the statutory mandatory minimum sentence. *See Gall v. United States*, 2007 WL 4292116, at *7, 522 U.S. __ (2007) (instructing that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range . . . [then,] after giving both parties an opportunity [for argument,] . . . the district judge should . . . consider all of the § 3553(a) factors[,] . . . make an individualized assessment based on the facts presented[,] . . . [and] adequately explain the chosen sentence to allow for meaningful appellate review. . . .").

8

differential."); *id.* ("[D]istrict courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-*Booker* sentencing process.").

We see neither legal error nor an unreasonable sentence.

IV.

We will affirm the judgment conviction and the judgment of sentence of Lamar Edge.