

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-1997

# United States v. Thomas

Precedential or Non-Precedential:

Docket 96-7476

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"United States v. Thomas" (1997). *1997 Decisions.* Paper 114.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/114

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 29, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7476

UNITED STATES OF AMERICA

v.

MELVIN MARVIN THOMAS,
<u>Melvin Thomas, Appellant</u>

On Appeal From the District Court
of the Virgin Islands, Division of St. Thomas
(D.C. Crim. No. 95-cr-00073-2)

Argued: April 7, 1997

Before: BECKER, ROTH, and WEIS, <u>Circuit Judges</u>.

(Filed May 29, 1997)

ALAN D. SMITH, ESQUIRE
 (ARGUED)
Hodge & Francois
1340 Taarnederg Road
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802

<u>Attorney for Appellant</u>

JAMES A. HURD, JR., ESQUIRE
United States Attorney

MARK PATTERSON, ESQUIRE
 (ARGUED)
Assistant United States Attorney
5500 Veterans Drive
Federal Building & U.S. Courthouse
Suite 260
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802-6924

Attorneys for Appellee

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This is an appeal by Melvin Thomas from a judgment in a criminal case following a jury verdict of guilty on the charge of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846.1 Because the evidence adduced at trial was insufficient to support the verdict, we will reverse.2

_____

1. Thomas was tried on a four-count indictment that also included charges of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); attempted importation of cocaine, 18 U.S.C. § 952(a); and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). However, he was acquitted of all but the conspiracy count.

2. In view of this disposition, we need not address the other points raised on appeal. Principally, we do not reach Thomas' contention that the court erred when it denied Thomas' request to instruct the jury on character evidence. Thomas has also challenged the refusal of the district court to exclude from evidence the telephone number retrieved from the pager that he had on his person at the time of his arrest, alleging that it should have been suppressed because of an unlawful search and seizure. We believe that the seizure falls within an exception to the warrant requirement as a lawful search incident to arrest. Again, we need not formally decide that issue because, even with the inclusion of that material, the evidence is insufficient to sustain the conviction.

2

I.

On the morning of February 10, 1995, the United States Customs Service at the Cyril E. King airport on St. Thomas seized twenty-four kilograms of cocaine from a suitcase checked to Atlanta, Georgia. The officials identified the owner of the bag as Jennifer Lynch, whose plane had already departed for Atlanta. Customs officials on St. Thomas notified officials in Atlanta, and they arrested Lynch pursuant to a warrant when she arrived there. Lynch agreed to cooperate. She informed the agents that one Allan Petersen had directed her to take the suitcase carrying the cocaine to Atlanta, check into a room at the Atlanta Airport Days Inn, call him at a Virgin Islands telephone number, leave the bag with the cocaine in the room, return the key to the front desk in an envelope for "Melvin Smith" or "Cousin Melvin Smith," leave the Days Inn, check into another hotel for the night, and return to St. Thomas the following day.

Along with agents, Lynch checked into room 510 of the Airport Days Inn. Monitored by the agents, Lynch placed a phone call to the designated telephone number. She informed the agents that she had spoken to Petersen and given him the hotel room number. An envelope containing the room key was then left at the front desk for "Cousin Melvin Smith." Customs officials also left an empty suitcase in room 510 and set up surveillance directly across the hall in room 509.

In due course, Thomas entered room 510. The officers observed him and arrested him when he exited the room a few minutes later. They took from Thomas a 9mm pistol registered to him, a pager, a cellular phone, a Virgin Islands driver's license, the envelope with "Cousin Melvin Smith" written on it, and the room key. They retrieved from the pager the same telephone number at which Lynch had called Petersen from the hotel room. Thomas agreed to answer questions. He told the agents that he went to the room because a person named Cliff had offered him $500.00 to check on a bag at the hotel, but that he knew nothing about a cocaine deal. Petersen's phone records showed several calls to the pager and cellular phone carried

3

by Thomas on the day of his arrest, and to Thomas' home phone.

Thomas was tried in the District Court of the Virgin Islands, together with Petersen. Lynch, who had pled guilty to the conspiracy count prior to trial, testified, on behalf of the government, that Petersen had offered to pay her to take the cocaine to Atlanta, relating the facts described above. She also testified that she did not know Thomas, and had not conspired with him to possess cocaine with intent to distribute. Petersen took the stand in his own defense. He too testified that he did not know Thomas, and that he had not conspired with him to possess cocaine with intent to distribute.

Thomas then took the stand, and testified as follows. On the morning of his arrest, he received a phone call from "Cliff," whom he did not know. Cliff informed Thomas that he had obtained Thomas' telephone number from a mutual friend. Cliff asked Thomas if he would do him a favor, and stated that he would call later that day. Later that day, Thomas received a call from his home on his pager. He returned the call to his home and was advised that Cliff was trying to reach him. He told the party answering to have Cliff contact him on his cellular phone. Shortly thereafter, his testimony continued, he received a call from Cliff who asked him to go to the Airport Days Inn, ask the front desk clerk for a key left for "Cousin Melvin Smith," go to the room, open the door, close the door without locking it, and return the key to the front desk. Finally, Thomas testified that he did not know either Lynch or Petersen, that he had not conspired with them to possess cocaine with intent to distribute, and that he had no knowledge of any such scheme or conspiracy.

II.

In reviewing Thomas' contention that the evidence presented at trial was insufficient to sustain his conspiracy conviction, we must determine whether "there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict." Government of the Virgin Islands v. Isaac, 50 F.3d 1175,

4

1179 (3d Cir. 1995). The elements of a conspiracy may be proven entirely by circumstantial evidence, see United States v. Kapp, 781 F.2d 1008, 1010 (3d Cir. 1986), but each element must be proven beyond a reasonable doubt, United States v. Samuels, 741 F.2d 570, 573 (3d Cir. 1984).

There can be no doubt that, when Thomas pursued his errand at the Days Inn, he knew that he was somehow involved in an illicit activity. More, however, is required to uphold a criminal conviction for conspiracy. Specifically, one of the elements that must be proven by the government beyond a reasonable doubt in a conspiracy case is that the "alleged conspirators shared a `unity of purpose,' the intent to achieve a common goal, and an agreement to work together toward the goal." United States v. Wexler, 838 F.2d 88, 90-91 (3d Cir. 1988) (citing United States v. Kates, 508 F.2d 308, 310-11 (3d Cir. 1975)). We have explained that, in order to sustain a conspiracy conviction, the government must put forth " `evidence tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment.' " Id. at 91 (quoting United States v. Scanzello, 832 F.2d 18, 20 (3d Cir. 1987)). While Thomas concedes that there is evidence tending to show that he entered into some kind of agreement, he contends that the evidence presented at trial is insufficient to prove beyond a reasonable doubt the essential element that he knew that the purpose of the agreement was the specific unlawful purpose charged in the indictment, i.e., the possession of a controlled substance with intent to distribute. We view the evidence in the light most favorable to the government, but are nonetheless constrained to agree with Thomas.

There is no evidence that Thomas had any prior relationship with Lynch or Petersen, or even knew them. Lynch and Petersen specifically denied knowing Thomas. Moreover, the record does not show anything about the substance of the calls made to Thomas' home, to his cellular phone, or to his pager. Indeed, there was no evidence, apart from the fact that several phone calls were made from Petersen's phone to Thomas' home, cellular phone, and pager on the date of his arrest, that Thomas ever spoke with either Lynch or Petersen on February 10 or

5

any time before or after that date. Nor did the government's evidence controvert what Thomas told the agents following his arrest or what he testified to about his reasons for going to the Days Inn.

The government's case depends upon the drawing of an inference from the fact and the timing of the calls made from Petersen's phone that Thomas in fact spoke to Petersen several times on February 10, 1995 and was told that drugs were in the bag at the Days Inn. Even assuming that it is permissible to infer from the evidence that Petersen was "Cliff" and that Thomas spoke to him, which is doubtful, there was no evidence concerning the substance of the phone calls. It is, therefore, speculative to conclude that Thomas knew that drugs were involved. Our conspiracy case law forbids the upholding of a conviction on the basis of such speculation.

In Wexler, supra, for example, where we reversed the defendant Wexler's conviction for conspiracy to distribute hashish, we held that the "inferences rising `from keeping bad company' are not enough to convict a defendant for conspiracy." Id. at 91 (quoting United States v. Cooper, 567 F.2d 252, 254-55 (3d Cir. 1977)). We noted that there was ample circumstantial evidence from which the jury could have concluded that Wexler was involved in a conspiracy to transport some kind of contraband in a Ryder truck: he drove a car in a manner that suggested that he was a lookout for the truck movement; a fictitiously obtained CB radio was in the car he drove when he was arrested; and he made a gesture consistent with signaling one of the conspirators and spoke with another several times during the course of the operation. Id. But what was missing, we found, "was any evidence that Wexler knew that a controlled substance was couched behind the doors of the Ryder truck. That knowledge is an essential element of the conspiracy charged. Without it the conviction must fail." Id. We explained that:

[i]t is more likely than not that Wexler suspected, if not actually knew, that some form of contraband was involved in the elaborate secretive arrangements for transport in which he participated. But these permissible inferences do not support a holding that

6

the government met its burden to prove beyond a reasonable doubt that Wexler knew this was a conspiracy to transport hashish or even another controlled substance. The evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime.

Id. at 92.

Similarly, in United States v. Terselich, 885 F.2d 1094 (3d Cir. 1989), the defendant was convicted of possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. Terselich was a passenger in car that was pulled over on I-95 by the Delaware State Police. Cocaine was discovered in a secret compartment in the trunk of the car. We reversed the convictions for insufficiency of the evidence, reasoning that there was less evidence presented in that case than in Wexler "from which the jury could have inferred that Terselich knew of a conspiracy and that its object was to transport the illegal drugs." Id. at 1098. More specifically, we pointed out that the evidence that Terselich shared driving responsibilities and lodging with the driver of the car and placed his luggage in the trunk of the car along with the fact that Terselich appeared nervous when he was stopped was not enough to support the inference that Terselich knew that there was cocaine in the secret compartment in the trunk. Id.

Based on this case law, we conclude that, as there is no evidence from which a jury could permissibly infer that Thomas knew that the object of the conspiracy was to possess cocaine with the intent to distribute, the evidence cannot support Thomas' conspiracy conviction. We will, therefore, reverse the judgment and direct the district court to enter a judgment of acquittal.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

7