**UNITED STATES of America,**

v.

**Pedro ADAMES, Appellant,**

**United States of America,**

v.

**Magdalena Olta Dolison, Appellant.**

Nos. 02–1133, 02–1211.

United States Court of Appeals,
Third Circuit.

Argued Nov. 8, 2002.

Decided Jan. 14, 2003.

George H. Hodge, Jr. (Argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellant, Pedro Adames.

Thurston T. McKelvin (Argued), Office of Federal Public Defender, Christiansted, St. Croix, U.S. Virgin Islands, Douglas J. Beevers, Office of Federal Public Defender, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellant, Magdalena Olta Dolison.

Anthony J. Jenkins (Argued), Office of United States Attorney, United States Courthouse, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellee.

Before SCIRICA, ALITO and RENDELL, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Pedro Adames (a/k/a "Sandino") and Magdalena Dolison were convicted of conspiracy to possess with intent to distribute cocaine. (21 U.S.C. §§ 846 and 841(a)(1), (b)(2)(B)(ii)(II)). Sandino was also convicted of conspiracy to import cocaine. (21 U.S.C. §§ 952(a), 963 and 960(b)(2)(B)(ii)). The principal issue on appeal is the sufficiency of evidence. We will affirm.

## I.

In July 2000, a man called "Sizzler" asked Anthony Hewie to take "something" from Curacao to St. Thomas, for which Hewie would be paid between $9,500 and $10,000 upon delivery.[1] Hewie agreed and was instructed to deliver three packages to "Sandino." He neither looked into the packages nor was told the packages contained drugs. Instead, throughout the conspiracy, the packages were referred to as the "stuff" or "something."

Hewie arrived in St. Thomas and on August 14, 2000, he telephoned a number Sizzler had given him to contact Sandino. A female, later identified as Dolison, answered. When Hewie asked to speak with Sandino, Dolison said, "It's okay. You can talk to me." Hewie told her, "I got something from somebody in Curacao for you." Dolison replied, "Okay. I'm going to be in the area in about five minutes. I'll be in front of the Nova Scotia Bank." Hewie took the drugs to the bank where he met Sandino and Dolison for the first time and said, "I have the stuff."

After Dolison and Sandino conversed with each other in Spanish,[2] Dolison said to Hewie, "We were not expecting anything so we don't have any money. We're going to have to go and get the money." Dolison then said to Hewie, "This is a serious and dangerous business, you know." Hewie replied, "I know that." The parties arranged to meet in an hour after Sandino and Dolison obtained the money. But before they were able to do so, Hewie was found in possession of the three packages containing more than 500 grams of cocaine and was arrested. Sandino and Dolison were subsequently arrested.

The government filed a two-count indictment, charging Sandino and Dolison with conspiracy to import and conspiracy to possess with the intent to distribute cocaine. Before trial, Sandino sought a determination that Hewie was not a co-conspirator. But the District Court found Hewie was in fact a co-conspirator. As noted, a jury convicted Sandino of conspiracy to import cocaine and conspiracy with intent to distribute cocaine and Dolison of conspiracy with intent to distribute cocaine.

## II.

We review to "determine whether there is substantial evidence, when viewed in the light most favorable to the government, to

---

1. At trail, Hewie testified as a government witness.

2. Sandino spoke little English and needed Dolison to translate Hewie's words into Spanish.

support the jury's verdict."[3] *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir.1997) (quotations omitted). The elements of a conspiracy may be proven entirely by circumstantial evidence, but each element must be proven beyond a reasonable doubt. *Id.* (citing *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir.1986)). Seen in this light, the evidence is sufficient to support defendants' convictions.

■ A conspiracy conviction will be sustained where the government proves the "alleged conspirators shared a unity of purpose, the intent to achieve a common goal, and an agreement to work together toward the goal." *Id.* (citations and internal quotations omitted). Defendants argue there could be no conspiracy because Hewie had no specific knowledge of what he was transporting, never met nor spoke with defendants before the transaction at issue, and never referred to the objects he was carrying as "cocaine" or "drugs." Thus, defendants argue, citing *Thomas*, that the government failed to prove they entered into an agreement and knew the specific unlawful purpose charged in the indictments.[4] *Id.*

But unlike the defendant in *Thomas*, defendants here directly participated in the illicit transaction and were principals in the conspiracy.[5] Sizzler gave Sandino's

---

3. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231.

4. In *Thomas*, we reversed a conviction for conspiracy to possess with the intent to distribute cocaine because we found a lack of evidence from which a jury could permissibly infer that defendant knew the object of the conspiracy. 114 F.3d at 406. Although we found it clear that defendant knew he was somehow involved in an illicit activity, we said more was required to uphold a criminal conviction for conspiracy. *Id.* at 405.

In that case, a drug courier named Lynch was arrested and subsequently agreed to co-operate with the DEA by following through with a planned drug transaction. *Id.* at 404. According to Lynch, a man named Peterson instructed her to check into a hotel, leave a suitcase filled with cocaine in a hotel room, return the room key to the front desk in an envelope for "Cousin Melvin Smith," and leave the hotel. *Id.* After Lynch carried out her part of the plan, defendant Thomas obtained the room key from the front desk, entered the designated room, and was arrested upon exiting. *Id.* Thomas claimed he was to be paid $500 to check on a bag in the hotel room, but he denied having any knowledge that the bag contained cocaine. *Id.* at 405.

Despite evidence that Peterson made several calls to Thomas's pager, cell phone, and home on the day of Thomas's arrest, we said that Thomas could not be found guilty of a conspiracy. *Id.* Specifically, we said there was no evidence concerning the substance of the phone calls or showing Thomas had a prior relationship with Lynch or Peterson. *Id.* at 405–06. Even if it were permissible to infer Thomas knew he was involved in an illicit activity, we said the evidence must "prove beyond a reasonable doubt the essential element that he knew that the purpose of the agreement was the specific unlawful purpose charged in the indictment, i.e., the possession of a controlled substance with intent to distribute." *Id.* at 405. We reversed on the grounds that Thomas's conviction rested only on the speculative conclusion that he knew drugs were involved. *Id.* at 406.

5. On this basis, we similarly reject Dolison's contention that the government failed to prove she joined in a conspiracy under *United States v. Idowu*, 157 F.3d 265 (3d Cir.1998). Unlike the defendant in *Idowu*, Dolison was a principal in the conspiracy. In *Idowu*, we held the evidence insufficient to uphold a conspiracy conviction because the government failed to prove that any of the conspirators mentioned "drugs" to defendant. We said that, despite defendant's knowledge of his involvement in an illicit transaction of some sort, the government failed to satisfy its burden of proving beyond a reasonable doubt that the defendant knew the "particular illegal objective contemplated by the conspiracy." *Id.* Although defendant arrived in a car with a conspirator, overheard conversations, owned and carried a bag containing money for a drug transaction, and knew the money was to be used to buy something to fit in the suitcase, we found a lack of specific evidence

telephone number to Hewie with instructions to deliver packages that contained cocaine. As noted, for this simple act, Hewie would be paid between $9,500 and $10,000. Although defendants had no contact with Hewie before the transaction, they met him without hesitation and sought to obtain money for the packages Hewie was carrying based on his statement: "I got something from somebody in Curacao for you." Defendants arranged to meet Hewie in an hour and to bring the money without asking him to what "something" or to whom "somebody" referred. Furthermore, Dolison's statement to Hewie, "This is a serious and dangerous business" is probative of knowledge. Thus, a jury could reasonably infer defendants knew the packages contained illegal drugs.

There is other circumstantial evidence of knowledge. Sandino traveled to Curacao just days before the transactions. Also, Dolison transferred approximately $10,000 from St. Thomas to Curacao during the time frame of the conspiracy. A jury reasonably could infer Sandino traveled to arrange for the delivery of cocaine and Dolison sent money to facilitate the importation and distribution of cocaine. Therefore, there is sufficient evidence to support the jury verdict.

### III.

■ Dolison also contends the District Court erred by rejecting her motion to suppress post-arrest statements made prior to *Miranda* warnings.[6] But, "where a subsequent confession is obtained constitutionally, the admission of prior inadmissible confessions [is] harmless error." *United States v. DeSumma*, 272 F.3d 176, 180

(3d Cir.2001) (quoting *United States v. Johnson*, 816 F.2d 918, 922 (3d Cir.1987)). Because Dolison made a subsequent, constitutionally obtained, admissible statement that mirrored earlier statements, we find admission of the initial statements harmless error.

■ Dolison and Adames argue the District Court abused its discretion in admitting evidence of their recent unexplained wealth. But " 'the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt and will support ... conviction.' " *United States v. Hall*, 44 Fed.Appx. 532, 534–35, 2002 WL 1809652 (3d Cir.2002) (quoting *United States v. Chaney*, 446 F.2d 571, 575 (3d Cir.1971)). We see no abuse of discretion.

We reject defendants' contention the District Court committed error in admitting Sizzler's statements to Hewie. These out-of-court statements are admissible when made by a co-conspirator in the course of and in furtherance of a conspiracy, under Federal Rule of Evidence 801(d)(2)(E). We see no error.

■ We also reject defendants' assertion raised and ruled on in a pre-trial suppression hearing that their arrests were the unlawful result of an uncorroborated, anonymous tip or information from an unreliable informant, namely Hewie. The record contains testimony of several law enforcement agents who observed defendants meet Hewie at the Nova Scotia Bank and drop him off. Law enforcement officers later conducted a traffic stop of defendants, wherein defendants gave

---

that defendant had knowledge of the transaction's subject matter. *Id.*

**6.** After being placed under arrest, Dolison was asked, "What are you doing here?" and "Where is the vehicle?" According to Officer McHugh, Dolison told him, "We were-well Mr. Adames-was attempting to get taxi fares." McHugh testified that Dolison said, "The vehicle was across the street in the Blockbuster Video parking lot" and later "said it was in the Kmart parking lot."

statements inconsistent with the agent's observations. Hewie's statement to the agents was consistent with their own observations. We see no error.

Finally, we reject Dolison's contention the District Court failed to properly instruct the jury. The jury was properly instructed on intent to commit the underlying offense, to wit, conspiracy to possess with intent to distribute cocaine.[7]

## IV.

For these reasons, the judgment of conviction and sentence will be affirmed.

---

**7.** The jury was instructed:

For you to find ... a particular defendant guilty of the crime charged in Count 2, that is, conspiracy to possess with intent to distribute cocaine, you must be convinced that the government has proved each of these following three elements beyond a reasonable doubt.... One, that an agreement or conspiracy existed between two or more persons; secondly, that the object of the agreement was to possess with intent to distribute 500 or more grams of a mixture or substance of a detectable amount of cocaine.... You're instructed as a matter of law that cocaine hydrochloride is a controlled substance. It is solely for you, however, to determine whether or not the government has proved beyond a reasonable doubt that these defendants ... conspired to possess with intent to distribute a substance which was cocaine hydrochloride. (J.A. at 579, 582).