**UNITED STATES of America,**
**Appellee,**

v.

**Beatriz Elena HENAO, also known as Sealed Defendant 1; Armando Enano; Victor De Boer; Valderama Ruiz; Virgilio Martinus Manuel; Ricardo Quintero, Defendants,**

**Carlos Humberto RUIZ, also known as "Cantorro", Defendant–Appellant.**

**No. 03–1144.**

United States Court of Appeals, Second Circuit.

March 11, 2004.

David M. Rody, Assistant U.S. Attorney, for David N. Kelley, United States Attorney for the Southern District of New York (Karl Metzner, Assistant U.S. Attorney), for Appellee, of counsel.

Martin B. Klotz, Willkie, Farr & Gallagher LLP, New York N.Y. (Michael D. Maimin), for Defendant–Appellant, of counsel.

PRESENT: VAN GRAAFEILAND, LEVAL, and CALABRESI, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellee Carlos Humberto Ruiz appeals from his conviction, after a one-week jury trial, of violating federal narcotics laws by conspiring with a group of people that sought to import large amounts of methylenedioxymethamphetamine (MDMA or "ecstasy") into the United States.[1] Ruiz's only argument is that there was insufficient evidence proffered at trial to allow a rational jury to conclude, beyond a reasonable doubt, that he knew—or consciously avoided knowing—that the specific object of the conspiracy was the importation of a *controlled substance*, as opposed to some other contraband such as diamonds.

"[V]iewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor," as we must where a defendant brings a sufficiency challenge, *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir.2002), the following facts were adduced before the jury at trial. In April 2001, an informant introduced an undercover officer working for the German State Police, Lieutenant Holger Massing, to several members of a Netherlands-based ecstasy distribution ring. Massing posed as a transportation specialist, and offered to smuggle large numbers of ecstasy pills into the United States for a substantial fee. Working with police in the United States, Massing arranged a test shipment of about 47,000 pills to New York City, which was delivered but also sabotaged, in a way that made it seem that the courier, rather than Massing, was responsible for the failure.

The leaders of the conspiracy in Amsterdam then contracted with Massing for a second shipment of approximately 301,000 ecstasy pills to New York City. In early August 2001, Massing received the drugs, and was given telephone numbers for an individual in New York known as "Lelo," who turned out to be a translator for the true courier, who was Ruiz. Massing arranged a time to meet the two in a restaurant, bringing with him DEA undercover agent Anton Kohut (who posed as a Russian associate of Massing's), and about 300,000 ecstasy pills, most of them fakes. The four met, but the transfer did not go as planned. Ruiz and Lelo did not have a vehicle, and wanted to borrow the car that the agents had brought the drugs in. Massing resisted that suggestion, and also informed Ruiz that he was expecting "140" in exchange for what was, at another point

1. Specifically, Ruiz was found guilty of one count of conspiracy to import MDMA in contravention of 21 U.S.C §§ 812, 952(a)(2), 960(b)(3), and 963, and one count of conspiracy to distribute and possess with intent to distribute MDMA in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846. The district court granted Ruiz a minor role reduction, *see United States v. Ruiz*, 246 F.Supp.2d 263 (S.D.N.Y.2002), and sentenced him to the upper end of the resulting Guidelines range, resulting in 97 months of imprisonment, five years of supervised release, and a $200 special assessment.

in the conversation, referred to as "the 300." (Previously Massing had agreed with one of the leaders of the conspiracy that Massing would receive $140,000 in "transportation costs" at the transfer). Ruiz claimed to know nothing about this money. Eventually the agents offered to let Ruiz borrow their car and take the contraband without receiving any money in exchange. This, however, made Ruiz suspicious, and he refused to close the deal. The four arranged to reconvene after Ruiz had spoken to the leaders of the conspiracy. When Ruiz and "Lelo" turned up to meet the agents the next day, they were promptly arrested.[2] They never saw or took possession of the drugs.

In bringing a sufficiency of the evidence claim, Ruiz "bears a very heavy burden." *United States v. Scarpa,* 913 F.2d 993, 1003 (2d Cir.1990) (quotation marks omitted). If substantial evidence exists to support a verdict, it must be sustained, *United States v. Zabare,* 871 F.2d 282, 286 (2d Cir.1989), and it has been said that adherence to this deferential standard is particularly important in cases of conspiracy, "because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre,* 960 F.2d 1112, 1121 (2d Cir.1992) (quotation marks omitted).

To convict a defendant of conspiracy, the government has the burden of proving, *inter alia,* that a defendant "knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy," *United States v. Monaco,* 194 F.3d 381, 386 (2d Cir.1999) (quotation marks omitted), and therefore that he or she had "some knowledge of the unlawful aims and objectives of the scheme," *United States v. Lanza,* 790 F.2d 1015, 1022 (2d Cir.1986). We agree with Ruiz, therefore, that the government was required to provide evidence that a jury could use to find that Ruiz knew that the conspiracy aimed to import *controlled substances*—as opposed to some other kind of contraband—into the United States. And we recognize the existence of cases in which, under somewhat analogous circumstances, our sister circuits have overturned convictions on grounds of insufficient evidence. *See, e.g, United States v. Reveles,* 190 F.3d 678 (5th Cir.1999); *United States v. Idowu,* 157 F.3d 265 (3d Cir.1998); *United States v. Thomas,* 114 F.3d 403 (3d Cir.1997). But when we scrutinize the sufficiency of evidence, the devil is in the details. And in this case, we conclude that the totality of the facts demonstrated at trial, which included Ruiz's apparent understanding of the shorthand and coded references used in the negotiations, especially the use of "the 300" to refer to what was in fact approximately 300,000 ecstasy pills, and the expectation manifested by other conspirators that Ruiz would count the pills, did permit the jury to conclude, beyond a reasonable doubt, that Ruiz was fully familiar with the nature of the conspiracy and had actual knowledge that the transaction involved drugs.

We have considered all of appellant's claims and find them meritless. We therefore AFFIRM the judgment of the district court.

---

**2.** "Lelo" was not prosecuted in connection with this arrest.