

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2006

# USA v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1724

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Smith" (2006). *2006 Decisions.* Paper 937.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/937

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1724

_____

UNITED STATES OF AMERICA

v.

THERESA MCINTYRE SMITH,
                                                    Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 04-cr-00021)
District Judge: Honorable Gary L. Lancaster

_____

Argued May 16, 2006

Before:  RENDELL, VAN ANTWERPEN and WEIS, Circuit Judges.

(Filed June 8, 2006)

_____


Karen S. Gerlach
Kimberly R. Brunson     **[ARGUED]**
Office of the Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
     *Counsel for Appellant*

Laura S. Irwin
Rebecca R. Haywood     **[ARGUED]**
Office of the U.S. Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 15219
    *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

A jury convicted Theresa Smith of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine and the District Court sentenced her to the mandatory minimum of ten years imprisonment.  Smith appeals both her conviction and sentence.  We are not persuaded that either the jury's verdict or the sentence imposed should be set aside, and will therefore affirm.

I.

This case arises from Smith's involvement with a drug conspiracy operating out of Houston, Texas that distributed large quantities of cocaine in Michigan, Ohio, and Pennsylvania.  Smith met Roy Mercer, the figure at the center of the conspiracy, in 1992 at a hair salon where Mercer worked and Smith had her hair done.  Over time, they became close friends and began to see each other outside the salon several times a month. Their children played together, they visited each other's homes, and Mercer would occasionally borrow Smith's car.  Smith once took her children and Mercer's children to Disneyland; Mercer sometimes gave Smith marital advice.

2

Though Mercer had been a hair stylist when Smith met him, he began selling drugs in 1995. By 1997, Mercer had stopped working as a stylist altogether and his primary source of income derived from drug sales. Several of Mercer's relatives were a part of his distribution network, including his niece, sister, and brother. Mercer's lifelong friend, Terrence Tarver, purchased substantial amounts of cocaine from him for distribution in Ohio and Pennsylvania. Christopher Smith (not related to Theresa Smith) was a courier for Tarver and a drug dealer in his own right in Pennsylvania. Mercer, Tarver, Christopher Smith, and several other members of the conspiracy were indicted, pled guilty, and testified for the government at Theresa Smith's trial.

Smith began working for Continental Airlines as a customer service agent and ground crew member in 1994 and became a flight attendant with the Airline in 1999. The government presented evidence at trial that Smith used her employment at the airline to facilitate Mercer's drug distribution. Witnesses testified that Smith introduced Mercer to Continental employees who agreed to smuggle drugs onto planes; that she sold Continental Airlines "buddy pass tickets," intended for use by an employee's friends or family, to members of the conspiracy so that they could cheaply transport drugs and avoid suspicion by authorities; that Smith often gave members of the conspiracy rides to the airport when they were about to carry drugs on planes; and that Smith herself transported drugs to the airport to be smuggled on Continental flights. There was also testimony that it was common knowledge among those who knew Mercer well that he

3

was heavily engaged in drug trafficking. Finally, law enforcement agents testified that on June 23, 1999 Smith met a drug courier in Mercer's network at the Detroit Metropolitan Airport and identified for the courier a suitcase containing eleven kilograms of cocaine that Mercer had sent on the same plane that Smith had been on.

Mercer himself provided conflicting testimony about Smith's involvement in the conspiracy. He emphasized that Smith had nothing to do with his distribution network, even as he acknowledged that Smith had facilitated the conspiracy's success in several ways. Mercer testified that any involvement in the conspiracy on Smith's part was the product of his manipulation, not her knowing participation in drug distribution. Smith testified on her own behalf that she did not know Mercer was a drug dealer. In addition, she denied introducing Mercer to airline employees who would help him smuggle drugs or facilitating the transportation of baggage on Continental for Mercer.

The jury returned a guilty verdict against Smith on November 22, 2004. The District Court denied Smith's motion for a new trial and sentenced her to the mandatory statutory minimum of ten years imprisonment. We have jurisdiction over Smith's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

Smith appeals her conviction on three grounds. First, she argues that there is insufficient evidence to support the jury's finding that she knew of the specific object of the conspiracy and knowingly participated in it. Second, she claims that the District

4

Court erred by providing a willful blindness charge to the jury in light of the evidence produced at trial. Third, she contends that the jury produced an internally inconsistent verdict by finding that Smith both intentionally joined the conspiracy and was willfully blind to her participation in it. We reject each of these arguments.

A.

To prove conspiracy, the government must show that there was "an agreement, either explicit or implicit, to commit an unlawful act, combined with intent to commit an unlawful act, combined with intent to commit the underlying offense." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). The alleged conspirators must share a "unity of purpose," the intent to achieve a common goal, and an agreement to work together towards that goal. *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004). We have held that this requires an alleged conspirator to have knowledge of the *specific objective* of the conspiracy. *Cartwright*, 359 F.3d at 286-87; *United States v. Idowu*, 157 F.3d 265, 266-67 (3d Cir. 1998); *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir. 1997). While each element of the offense must be proved beyond a reasonable doubt, the government may prove them entirely by circumstantial evidence. *Brodie*, 403 F.3d at 134.

Smith argues that she lacked a "unity of purpose" with her alleged co-conspirators because she was unaware of the conspiracy's objective and did not intend to achieve its goal. She contends that the record does not demonstrate that she knew that her alleged

5

co-conspirators were distributing drugs. She points to evidence that she never actually saw the drugs in the suitcases she allegedly helped transport, that she did not know that members of the conspiracy used her "buddy pass tickets" to transport drugs, and that she drove members of the conspiracy to the airport without knowing that they were carrying drugs. Without sufficient evidence that she knew that the purpose of the conspiracy and intentionally facilitated its objective, Smith argues that the jury's verdict must be overturned. *See Cartwright*, 359 F.3d at 288 (overturning conspiracy conviction where government showed that defendant helped facilitate an illicit transaction, but did not prove defendant knew the specific nature of the transaction).

A claim of insufficiency of the evidence places a very heavy burden on an appellant. *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995). The critical inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This is a particularly deferential standard of review. *Cartwright*, 359 F.3d at 285-86. We draw all reasonable inferences in favor of the prosecution, *Jackson*, 443 U.S. at 318, and will overturn the verdict only where the prosecution's failure is clear, *United States v. Palma-Ruedas*, 121 F.3d 841, 855 (3d Cir. 1997). We must sustain the verdict if there is substantial evidence in the record to support the jury's decision, keeping in mind that it is not our role to weigh the evidence or determine the credibility of witnesses. *Cartwright*, 359 F.3d at 286.

Under this standard, we find that there was sufficient evidence before the jury to support its verdict. Mercer and Tarver stated at trial that Smith knew they were drug dealers, that this information was in fact common knowledge, and that Smith was often present at the apartment out of which Mercer ran his drug business. The record is replete with evidence that would support an inference by the jury that Smith participated in the conspiracy knowing its objective. According to trial testimony, she aided Mercer in various ways that seemed to be obviously related to the distribution of drugs. She facilitated the transportation of baggage on planes outside of normal airline procedures, sold "buddy pass tickets" to people that were very likely traveling in furtherance of the conspiracy, drove known drug dealers around Houston during their dealings with Mercer, and, at Mercer's request, identified a suitcase that contained cocaine for a drug courier at the Detroit Metropolitan Airport. Witnesses testified that Smith personally transported bags containing drugs to the airport so that they could be smuggled onto Continental flights. There was also evidence that Smith received money from Mercer and Tarver for her efforts.

Certain aspects of the record support Smith's contention that she did not knowingly join the drug conspiracy. Mercer testified that Smith never took bags to the airport for him and that she had no part of the conspiracy. Several witnesses who testified that Smith helped transport bags of drugs on planes also acknowledged that the bags were closed and locked prior to the time Smith took them into her possession,

7

suggesting that she may not have seen the drugs herself.  And much of the testimony against Smith came from witnesses whose own sentences had the potential to be reduced based on their cooperation with the government.  Yet, we must make all reasonable inferences in the government's favor at this stage and may not weigh the evidence or make credibility determinations ourselves.  We therefore find substantial evidence in the record to sustain the jury's verdict.

Smith relies heavily on our line of decisions in *Cartwright*, *Idowu*, and *Thomas*; however, we find these cases distinguishable from the one before us.  In those cases, each defendant was convicted of conspiracy based on his participation in an isolated illicit transaction, the specific nature of which (i.e., drugs versus some other contraband) was not necessarily known to the defendant.  We overturned the convictions because the defendants' mere involvement in the illegal transactions could not have supported an inference that they knew the objective of the conspiracies of which the transactions were a part.  *See Cartwright*, 359 F.3d at 288; *Idowu*, 157 F.3d at 268; *Thomas*, 114 F.3d at 406.  By contrast, the record here shows that Smith had longstanding relationships with Mercer and his co-conspirators, knew that the object of their conspiracy was to distribute drugs, and maintained ongoing involvement with the conspiracy.  We will not set aside her conviction under these circumstances.

## B.

The District Court instructed the jury that Smith could be found to have joined the

8

conspiracy if the government proved beyond a reasonable doubt that Smith had deliberately ignored the high probability that she was participating in a drug conspiracy and that her participation furthered the conspiracy's aims. Smith does not challenge the adequacy of this willful blindness instruction as it was worded, but rather the propriety of giving it in her case. She claims that the evidence presented at trial did not justify the charge at all. "Our review of a challenge to the propriety of the willful blindness instruction is plenary. In evaluating the charge, we view the evidence and the inferences drawn therefrom in the light most favorable to the government." *United States v. Wert-Ruiz*, 228 F.3d 250, 255 (3d Cir. 2000) (citations omitted). We will uphold a willful blindness charge if it is supported by sufficient evidence. *United States v. Stewart*, 185 F.3d 112, 126 (3d Cir. 1999).

There was more than enough in the record to support a willful blindness instruction in this case. A reasonable jury could have concluded that Smith repeatedly helped smuggle Mercer's bags onto airplanes but intentionally did not inquire into the contents of the bags, or into why Mercer might need such an unorthodox method of shipping, because she wanted to avoid actual knowledge. Had the jury credited testimony that Smith only handled the bags of cocaine after they were closed, it could have concluded that she deliberately did so to avoid specific knowledge of their contents. There was also evidence to suggest that Smith had introduced Mercer to airport employees who could "help him out," without ever inquiring what sort of "help" he

9

needed. Such evidence, together with testimony that Smith knew that Mercer sold drugs, was sufficient to support the willful blindness charge. The jury could have reasonably interpreted the record as showing that Smith deliberately ignored the high probability that she was participating in a drug conspiracy. *See Wert-Ruiz*, 228 F.3d at 256 (upholding propriety of willful blindness charge in light of potential jury interpretations of the evidence).

## C.

The jury found that (1) Smith intentionally and with actual knowledge joined the conspiracy, and (2) she was willfully blind to her participation in the conspiracy. Smith argues that this verdict was internally inconsistent and that she should receive a new trial. Smith urges that she could have *either* intentionally joined the conspiracy *or* have been willfully blind to her participation in it, but not both.

We are not convinced that the jury's verdict was necessarily internally inconsistent. This conspiracy extended over several years, and the jury could have reasonably concluded that Smith was originally willfully blind to her participation in it, but later gained actual knowledge that she was aiding in Mercer's drug distribution. However, even assuming that the verdict was internally inconsistent, a new trial is not warranted here. An allegedly inconsistent verdict does not necessitate a new trial if there is sufficient evidence to support each of the jury's findings. *United States v. Powell*, 469

10

U.S. 57, 67 (1984). We concluded in the preceding sections that there was sufficient evidence to support a guilty verdict either on an actual knowledge or a willful blindness theory. Consequently, there is no reason to set aside the verdict based on an alleged jury error.

## III.

Smith raises two objections to her sentence. First, she claims that the District Court should have sentenced her below the mandatory minimum by applying the "safety valve" provisions set forth at 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Second, she argues that a mandatory ten-year-term of imprisonment for a first time offender convicted of conspiracy violates the Eighth Amendment. We are not persuaded by either of these arguments.

## A.

A defendant has the burden to show by a preponderance of the evidence that the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 apply. *United States v. Sabir*, 117 F.3d 750, 754 (3d Cir. 1997). Of the five requirements that must be fulfilled for a district court to apply the provisions, only the fifth is at issue in this case. This requirement is satisfied when, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

11

On the day of her sentencing hearing, Smith met with government attorneys to provide them with all the information she knew about the conspiracy. Her statement was largely consistent with the testimony she had given during her trial. In particular, she continued to deny that she had knowledge of the conspiracy or any significant contact with its participants. Smith also testified at her sentencing hearing that, while in hindsight she realized that she should have known Mercer was a drug dealer, she did not realize this during her involvement with him. Based on the contrary evidence presented on these points at trial, the District Court found that Smith had not been truthful. The Court found that several of her claims at sentencing were not credible, including her assertion that she did not know that Mercer was a drug dealer, that she did not help smuggle suitcases onto planes, and that she did not drive members of the conspiracy to facilitate their drug transactions with Mercer. The District Court concluded that Smith had intentionally joined the conspiracy and had therefore not provided truthful information to the government as required under the safety valve provisions.

We may reject the District Court's finding that Smith did not provide all the information and evidence she had related to her offense only if this conclusion was clearly erroneous. *Sabir*, 117 F.3d at 752. Under this standard, we will uphold the District Court's finding. As discussed above, the government presented several witnesses at trial who testified as to Smith's actual knowledge of the conspiracy and intentional participation in it. The District Court credited this evidence, and we will not set aside its

12

decision to do so. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) ("[W]here findings of fact are based on live testimony, 'due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" (quoting Fed. R. Civ. P. 52(a))). The District Court's finding that Smith was not truthful, and the safety valve provisions therefore inapplicable, was "plausible in light of the record." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

## B.

Finally, Smith contends that her ten-year sentence was grossly disproportional to her crime and therefore violated the Eighth Amendment's prohibition on cruel and unusual punishment. *See Solem v. Helm*, 463 U.S. 277, 303 (1983) (finding life imprisonment without parole for a nonviolent recidivist who passed a bad check for $100 violated the Eighth Amendment). Smith faces an uphill battle on this point.

As a general matter, we give substantial deference to Congress's judgment on how a given crime should be punished. *See United States v. MacEwan*, 445 F.3d 237, 247 (3d Cir. 2006) (deferring to the broad legislative authority to determine the types and limits of punishments for crimes); *United States v. Sarbello*, 985 F.2d 716, 723 n.12 (3d Cir. 1993) (recognizing "the primacy of the legislature in making laws which reflect the moral and social priorities operative in theories of punishment and sentencing"). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *see*

13

*also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.")  Thus, the Supreme Court has rejected an Eighth Amendment challenge to a sentence of life imprisonment without parole for a defendant convicted of possessing 672 grams of cocaine, far less than the quantity of drugs distributed by the conspiracy with which Smith was involved. *Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991).  Likewise, other courts of appeals have upheld ten-year mandatory minimum sentences for drug convictions.  *See United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C. Cir. 1989) (rejecting claim that mandatory ten-year sentence for possession of over fifty grams of cocaine base was disproportionate to the crime); *United States v. Hoyt*, 879 F.2d 505, 513 (9th Cir. 1989) (upholding ten-year mandatory minimum sentence for first time drug conviction against Eighth Amendment claim).

Smith's sentence is undoubtedly severe, particularly in light of her continued assertion that she was, at most, tangentially involved in the drug conspiracy.  However, given the case law on this issue, we cannot say that Smith's sentence was so disproportionate to her crime as to have been unconstitutional.  *See United States v. Frazier*, 981 F.2d 92, 96 (3d Cir. 1992) (finding that ten-year mandatory minimum sentence for conspiracy to distribute at least 50 grams of crack cocaine did not violate the Eighth Amendment).

\* \* \* \* \*

14

For the reasons set forth, we reject Smith's arguments and will affirm both the conviction and sentence.