

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2006

# USA v. Zavala

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1776

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Zavala" (2006). *2006 Decisions*. Paper 847.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/847

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1776

———————

UNITED STATES OF AMERICA

v.

JOSE ZAVALA,
                              Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 02-cr-00446-3
District Judge:  The Honorable Jan E. DuBois

———————

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2006

———————

Before: BARRY, SMITH, <u>Circuit Judges</u>, and RODRIGUEZ,[*] <u>District Judge</u>

———————

(Opinion Filed: June 23, 2006)

———————

OPINION

———————

_____

[*] The Honorable Joseph H. Rodriguez, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>

Appellant Jose Zavala challenges the sufficiency of the evidence leading to his conviction for conspiracy to distribute methamphetamine, as well as the legality of his sentence after *United States v. Booker*, 543 U.S. 220 (2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We will reverse.

**I.**

On June 25, 2002, Jose Zavala, a.k.a. Anthony Zavala, was observed by postal inspectors mailing a package from a Los Angeles post office to "Monica Flores, 13061 Dorothy Drive, Philadelphia, Pennsylvania 19116," with a return address of "David Martin, 7013 Glassgow Avenue, Los Angeles, California 90045." Zavala, as it turned out, knew no David Martin and was not in fact sending a package to Monica Flores. The package, which contained about 1,300 grams of methamphetamine, was claimed at the Philadelphia address by Michael Gonzales and Zavala's brother, Francisco. They were unaware, however, that the entire process had been observed by law enforcement agents, from the moment Zavala placed the package in the mail until an undercover postal inspector delivered the package on June 27 to a waiting Michael Gonzales, who greeted her by inquiring whether the package was for Monica Flores.

Michael Gonzales and Francisco Zavala were arrested. Jose Zavala was left alone by the authorities until a search warrant was executed at his home on September 12, 2002. No evidence of drug activity was found. Zavala did, however, waive his rights and spoke to two postal inspectors. When asked if he had sent a package on June 25, 2002, he said

2

he often mailed packages and could not recall. After being shown images of his mailing the package at issue here, he agreed that he had mailed a package that day. The inspectors then inquired as to the contents of the package, and Zavala said it was for his nephew and contained "toys and stuff like that." The officers were, of course, curious as to why, if that was so, he sent the package from David Martin to Monica Flores. Zavala could not recall writing out the label. A handwriting expert testified at trial that it was indeed his handwriting.

Zavala was arrested and subsequently charged with conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, aiding and abetting the attempt to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. His first trial resulted in a hung jury, and he was convicted following the retrial. The District Court, pre-*Booker*, sentenced him to 135 months imprisonment. He now appeals.

## II.

Zavala attacks the integrity of his underlying conviction, contending that there was insufficient evidence to establish that he knew the package contained methamphetamine.[1] "We apply a 'particularly deferential' standard of review with respect to a challenge to the sufficiency of evidence supporting a guilty verdict." *United States v. Al Hedaithy*, 392

---

[1] Counsel preserved the sufficiency of the evidence argument by moving for judgment of acquittal in the District Court.

F.3d 580, 604-05 (3d Cir. 2004) (citation omitted).  We "must determine whether, viewing the evidence most favorably to the government, there is substantial evidence to support the jury's guilty verdict."  *United States v. Idowu*, 157 F.3d 265, 268 (3d Cir. 1998) (citation and internal quotation marks omitted).  In application, "[i]f 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' this Court will sustain the verdict." *Al Hedaithy*, 392 F.3d at 605 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We will "not re-weigh the evidence presented at trial or reassess the credibility of the witnesses, and . . . will overturn a guilty verdict 'only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.'"[2]  *Id.* (citations omitted).

The jury heard evidence of Zavala's possession and control of the package at the time of mailing and his attempt to conceal from whom and to whom it was being sent.  Moreover, upon being questioned about the package, Zavala's explanations were lacking, to say the least, evidencing some consciousness of guilt.  The question, however, is whether a rational jury "could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 n.12 (citation omitted).  In this case, we conclude it could not.

---

[2] *See United States v. Allard*, 240 F.3d 840, 841 (3d Cir. 1957) ("The evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt.").

4

"[T]his court has [consistently] overturned convictions for conspiracy in drug possession and distribution because of the absence of any evidence that the defendant had knowledge that drugs were involved." *United States v. Mastrangelo*, 172 F.3d 288, 293 (3d Cir. 1999). For example, in *United States v. Wexler*, 838 F.2d 88 (3d Cir. 1988), Wexler was observed driving in a manner evidencing that he was acting as a lookout for a truck containing hashish. He was also seen communicating with fellow conspirators during the transport of the drugs. Moreover, the police discovered a CB radio bought with a false name in the car Wexler had been driving. Nevertheless, we found the evidence insufficient to establish "that Wexler knew that a controlled substance was couched behind the doors of the Ryder truck." *Id.* at 91. We concluded that "[i]t [was] more likely than not that [he] suspected, if not actually knew, that some form of contraband was involved in the elaborate secretive arrangements for transport in which he participated." *Id.* at 92. The evidence, however, did "not support a holding that the government met its burden to prove beyond a reasonable doubt that [he] knew this was a conspiracy to transport hashish or even another controlled substance. The evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime." *Id.* at 92; *see United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977) ("[T]here [was] no evidence that [appellant] knew what was in the padlocked rear compartment . . . . One may not be convicted of conspiracy solely for keeping bad company."); *see also United States v. Terselich*, 885 F.2d 1094, 1098 (3d Cir. 1989) ("[A]s in *Wexler* and *Cooper*, where the fact finder could not infer that the defendant

5

knew what was behind the locked door of the truck for which he served as 'look out' or in

which he travelled, so here the fact finder could not infer that [appellant] knew that the

car in which he travelled was transporting a large quantity of cocaine.").

Similarly, in *Idowu*, we reversed the conviction because knowledge of "the

specific unlawful purpose charged in the indictment" had not been established. *Idowu*,

157 F.3d at 268 (quoting *Wexler*, 838 F.2d at 91). There was a great deal of evidence

connecting Idowu with the unlawful activity:

> First, [the appellant] carried the brown leather bag containing the money.
> Second, [the appellant] apparently owned the bag, as evidenced by the fact
> that he kept personal documents in the bag. Third, [co-conspirator 1] was
> willing to leave [the appellant] alone with the money. Fourth, [co-
> conspirator 1] believed that it was safe to talk to [co-conspirator 2] in the
> presence of [the appellant]. Fifth, [the appellant] was the one who showed
> [co-conspirator 2] the money and who told [him] that he had checked it to
> ensure that it was all there. Sixth, [the appellant] opened the black suitcase
> to check the contents without being prompted by [co-conspirator 1].
> Seventh, the two defendants spoke Yoruban (a Nigerian dialect) together.
> Eighth, [co-conspirator 1] urged [the appellant] to feel around in the
> suitcase. Ninth, [the appellant] had $3,000 in his pocket at the time he was
> arrested, which he presumably had skimmed from the stash.

*Id.* Despite all of that, we determined that "only two inferences [were] proper: that Idowu

had some kind of preexisting relationship with [a co-conspirator], and that Idowu knew he

was participating in some sort of illegal transaction." *Id.*

> But the evidence [did] not support the critical inference on which the
> government's case depends – that [the appellant] knew the transaction was
> a drug transaction. Neither [co-conspirator 1] nor [co-conspirator 2]
> referred to the subject of their deal as 'heroin' or 'drugs' in [the appellant's]
> presence on the day of the transaction, or in their recorded phone

conversations.

*Id.*

In *United States v. Cartwright*, 359 F.3d 281, 283 (3d Cir. 2004), we again "conclude[d] that the evidence adduced at trial did not support an inference that [the appellant] knew he was participating in a transaction that involved a controlled substance, as opposed to some other form of contraband."  In *Cartwright*, as in *Idowu*, "there [was] ample evidence in the record to suggest that [the appellant] knew he was involved in an illicit transaction of some sort," *id.* at 286, but no evidence supported the inference that he knew drugs were involved.

> There [was] simply no logical and convincing connection between [the] facts [connecting the appellant to the transaction] and the inference the government seeks to draw.  Rather, that inference is based solely on speculation about a possible prior relationship between [the appellant] and [a co-conspirator], about how [the appellant] got to the [location of the transaction], and about what [the appellant] was doing prior to being sighted with [a co-conspirator], matters as to which there is no evidence.

*Id.* at 288.

Finally, in *United States v. Thomas*, 114 F.3d 403 (3d Cir. 1997), we vacated a drug conviction where the defendant was surveilled entering a room in which a suitcase containing drugs was being kept.  The police arrested him as he exited the room.  He told the officers that he knew nothing about the suitcase's contents, but was simply paid to make certain that it was in the hotel. On his arrest, however, he had a cellular phone, a pager, and a nine millimeter firearm.  The pager had phone numbers connecting him to a

7

target of the drug investigation. As we explained in *Cartwright*, "[w]e concluded from this evidence that Thomas must have known that he was somehow involved in an illicit activity; however, we held that any conclusion that Thomas knew drugs were involved was speculative." *Cartwright*, 359 F.3d at 288.

We reach the same conclusion here. The evidence supports the inference that Zavala knew, based on the addresses used and his later statements to investigators, that he was involved in something illicit. In order to conclude, however, that he knew that the package contained methamphetamine, the jury would have to speculate about conversations he had with his brother or his involvement in the packaging of the drugs, for there is surely no evidence on either score; indeed, there is no evidence that Zavala had anything to do with drugs. As in *Idowu*, *Cartwright*, and *Thomas*, Zavala was intimately involved in the transaction, but the lack of evidence establishing knowledge that it was a *drug* transaction dooms the government's case. *See Idowu*, 157 F.3d at 270 ("The fact patterns both in *Wexler* and in the case at bar are consistent with transactions that do not involve drugs of any sort. And because the government failed to provide evidence that [the appellant] knew that drugs were in fact the subject matter of the transaction, the jury could not draw a permissible inference that [the appellant] had knowledge of the nature of the deal."). In sum, there is "evidence tending to prove that [Zavala] entered into an agreement," but there is a serious question as to whether "he knew [that] the agreement had the specific unlawful purpose charged in the indictment." *Cooper*, 567 F.2d at 253.

8

The government avoids discussion of *Idowu*, *Cartwright*, and *Thomas*, and instead emphasizes Zavala's possession and control of the package. In *Idowu* and *Thomas*, the appellants at one time or another possessed or were in the immediate presence of containers containing drugs. Furthermore, Idowu was in the possession of large sums of money, and Thomas was carrying a firearm and had been in contact with an established co-conspirator. *See also Cartwright*, 359 F.3d at 289 ("In this case, as in *Thomas*, Cartwright was found to possess a firearm, a pager, and a cellular phone, and was even observed talking with [a co-conspirator]."). The evidence of Zavala's knowledge that drugs, as opposed to contraband generally, were involved is even slimmer than in these cases in which, it bears repetition, we reversed the convictions. *See id.* 289-90 ("[I]n the absence of any evidence indicating the substance of the conversation with [the co-conspirator], any evidence of a prior relationship with [the co-conspirator], or any other direct evidence indicating [the appellant's] knowledge, the jury could only speculate as to [his] knowledge."); *see also United States v. Jenkins*, 345 F.3d 928, 942 (6th Cir. 2003) (reversing the conviction of a defendant who received and paid $50.00 for an express package containing cocaine base); *United States v. Samad*, 754 F.2d 1091, 1097, 1099 (4th Cir. 1984) (finding that the evidence was insufficient where the defendant accepted a package not addressed to him and, although receiving public assistance, had a "relatively large sum of cash in his apartment," and concluding that the evidence "unmistakably reveals close physical association, and raises a plausible suspicion of criminal association, with another whose guilt . . . was sufficiently proven[, b]ut that obviously does not

9

support a finding of criminal agency").[3]

The government, in its attempt to align this case with those in which knowledge was deemed to be sufficiently established, places great emphasis on *United States v. Iafelice*, 978 F.2d 92 (3d Cir. 1992),[4] a decision predating *Idowu*, *Cartwright*, and *Thomas*. Iafelice drove his own car to a hotel parking lot where a drug transaction was to occur, and was observed driving in a manner indicative of counter-surveillance. Upon parking the car, one of two co-conspirators, who had been riding with Iafelice, went into the hotel. When he returned to the car, Iafelice popped the trunk so that the co-conspirator could take out a camera bag to bring into the hotel. Iafelice communicated by phone with the co-conspirator inside the hotel during the transaction. We reversed the judgment of acquittal,[5] citing Iafelice's "ownership and operation of the vehicle used to transport the drugs." *Iafelice*, 978 F.2d at 97. "Common sense counsels that an owner

---

[3] *See Cartwright*, 359 F.3d at 289-90 ("[E]ven if we were willing to speculate that [the appellant] arrived at the mall in [a co-conspirator's] car, *Idowu* indicates that such evidence, without more, would still be insufficient to infer that [he] knew he was involved in a drug transaction.").

[4] *See Cartwright*, 359 F.3d at 290 ("The government seems to recognize that *Thomas* and *Idowu* do not support its inference as to [the appellant's] knowledge . . . . [and] therefore argues that we should instead rely on *United States v. Iafelice*, 978 F.2d 92 (3d Cir. 1992) . . . .").

[5] On appeal, *Iafelice* was a simple possession case, ultimately proven by establishing constructive possession; the defendant had been acquitted of the conspiracy charge. The District Court granted Iafelice's post-verdict motion of acquittal, "conclud[ing] that the evidence was insufficient for a reasonable jury to find that the government had proven beyond a reasonable doubt each element of the possession offense." 978 F.2d at 95.

and operator of a vehicle usually has dominion and control over the objects in his or her vehicle of which he or she is aware, and usually knows what is in that vehicle." *Id.* We ultimately based our decision on "(1) the presence and use of a beeper and telephone during the drug transaction, and (2) the undisputed presence of the drugs in Iafelice's car." *Id.* at 96.

The jury could certainly have inferred that Zavala communicated at some earlier point with his brother and Gonzales, agreeing to mail a package in a particular manner, knowing that something illicit was inside. But to reach the conclusion the government seeks to reach would have required the jury to assume or to speculate not only that Zavala knew the package contained drugs, but that it contained, as the jury was charged, the particular drug methamphetamine. Circumstantial evidence can, of course, support a conviction in such cases, but the circumstantial evidence here, as in *Cartwright*, *Idowu*, and *Thomas*, points only to knowledge of some form of contraband. There is utterly no evidence that Zavala knew that drugs, much less methamphetamine, were in the package.

## III.

Because the evidence of knowledge was insufficient, the jury was required to speculate as to whether Zavala knew he was involved with drugs. We will not "uphold[] . . . a conviction on the basis of such speculation." *Thomas*, 114 F.3d at 406. The

11

judgment of conviction will be reversed.[6]

---

[6] Zavala requests a *Booker* remand.  In light of this decision, that request is moot.